828 So.2d 49 (2002)
Frances C. KING
v.
Glen L. GALLOWAY and Allstate Insurance Company.
No. 2001-CA-1358.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 2002.
Writs Denied November 27, 2002.
*50 Christopher E. Lawler, Brandi F. Ermon, Donovan & Lawler, APLC, Metairie, LA, for Defendant/Appellee.
James S. Rees, III, Simon, Rees & Simon, Covington, LA, for Defendant/Appellant.
Ferdinand J. Kleppner, Law Offices of Ferdinand J. Kleppner, LTD., Metairie, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and DAVID S. GORBATY).
CHARLES R. JONES, Judge.
The Plaintiff/Appellant, Frances C. King, and the Defendant/Appellant, Glen L. Galloway, each appeal the judgment of the district court granting the Motion for Summary Judgment dismissing the Defendant/Appellee, Allstate Insurance Company, from the case with prejudice. Following a review of the record, we affirm the judgment of the district court.

Facts and Procedural History
On January 16, 1998, Ms. King was staying as a guest in the home of her fianceé, Mr. Galloway, until her home could be refurbished. On that day, Mr. Galloway arrived home from work, and was informed by Ms. King that she could not locate her nightgown. Because there had been ongoing turmoil between Ms. King and Mr. Galloway's mother, Mr. Galloway confronted his mother regarding the missing nightgown. A short while later, Mr. Galloway located the nightgown in the master bathroom. He commenced to attack Ms. King. Mr. Galloway's version of the attack is that he hit Ms. King once open-handed, and when she tried to get away, he grabbed her and spun her around causing her ankle to break. Ms. King's version of the attack is that Mr. Galloway punched her in the arm twice as she passed by him, and she fell to the bed; the two of them began wrestling and as she was trying to get away her ankle was entangled with Mr. Galloway's feet causing her ankle to break. Ms. King drove herself to the hospital where she spent the night and underwent emergency surgery on her ankle.
Ms. King filed criminal charges against Mr. Galloway. He pled guilty to one count of simple battery, paid restitution, and served probation. Ms. King subsequently filed a civil suit in Orleans Parish against Mr. Galloway and Allstate Insurance Company (hereinafter "Allstate"), the liability insurer for Mr. Galloway's home, for the injuries that she sustained during the altercation.
Allstate filed a Motion for Summary Judgment on the grounds that it provided no coverage to Mr. Galloway for the independent criminal act alleged in the petition, and that there is an intentional act exclusion contained within the Allstate Homeowners Policy of Insurance issued to Mr. Galloway. The district court granted the Motion for Summary Judgment dismissing Allstate from this litigation with prejudice. Ms. King and Mr. Galloway appeal the judgment of the district court.

Discussion
Although the appellants, Mr. Galloway and Ms. King, raise several issues in their brief, there is only one issue to be addressed: Whether the district court erred by granting the Motion for Summary Judgment dismissing Allstate from this case with prejudice. We agree with the judgment of the district court.

*51 Appellate review of summary judgment is de novo, utilizing the same criteria that guides the trial court's granting of the judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
Smith v. Travelers Property Casualty, 35,695, p. 4 (La.App. 2 Cir. 2/27/02), 811 So.2d 1097, 1100.
It is well-settled in our law that general rules of interpretation apply to insurance policies in the same way that they apply in other contracts. Schroeder v. Board of Supv. of La. State Univ., 591 So.2d 342, 345 (La.1991). According to Smith v. Travelers Property Casualty, 35,695, p. 5 (La.App. 2 Cir. 2/27/02), 811 So.2d 1097, 1100-1101:
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Ledbetter v. Concord General Corp. 95-0809 (La.1/6/96), 665 So.2d 1166, citing, Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties' intent determines the extent of the coverage; and, if the wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter, supra, citing, Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). However, the rule of strict construction does not `authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Ledbetter, supra.

The relevant exclusion provision in the Allstate policy is clear and unambiguous. Specifically, the provision states:
Losses We Do Not Cover Under Coverage X:
1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
a.) such insured person lacks the mental capacity to govern his or her conduct;
b.) such bodily injury or property damage is of a different kind or degree then intended or reasonably expected; or
c.) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime. [Emphasis added.]
The appellants reference two cases, citing Pique v. Saia, 450 So.2d 654 (La.1984) and Breland v. Schilling, 550 So.2d 609 (La.1989), rehearing denied (Nov. 22, 1989), to support their position as to the appropriate manner in which the insurance policy should be interpreted. They argue that Pique affirms the theory that there must exist a link between the desired result of the insured's conduct and the actual *52 result manifest therefrom when interpreting policy language that excludes coverage on the basis of an intended result. The appellants argue that Breland stands for the proposition that insurance coverage under the intentional injury exclusion rests solely on whether the severity of the plaintiff's injuries were consistent with the severity of injuries desired by the tortfeasor/insured. Id. at 614.
In response thereto, Allstate argues that the intentional act exclusion in the policy in the instant case is distinguishable from the policies referenced in Pique and Breland. In both of those cases, the policy language under interpretation by the Supreme Court excluded coverage for "bodily injury ... which is either expected or intended from the standpoint of the insured." (Emphasis added). Therefore, Allstate argues that its policy focuses not on the insured's standpoint, but on a reasonable expectation of what may result from the actions of the insured. We agree.
In Pique, a police officer brought a civil action against an arrestee and his family to recover for injuries sustained when the insured pushed away from the fence outside of his father's home while resisting arrest for a traffic violation. The Supreme Court found that the injuries sustained by the officer resulted from a nonintentional and negligent act, despite the fact that the insured's resistance to arrest was legally unjustified, where there was only circumstantial evidence of intent, and therefore, the provision in the homeowner's insurance policy which excluded coverage for bodily injury expected by the insured did not exclude coverage for the police officer's injuries. The Supreme Court in this case viewed an intentional injury as:
[T]he product of an intentional act, ... when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from the conduct, whatever his desire may be as to the result.
Pique, 450 So.2d at 655, citing, Bazley v. Tortorich, 397 So.2d 475 (La.1981)
Breland arises out of an altercation at a softball game. After being tagged out on an attempt to steal third base, the plaintiff dropped, tossed, or threw the softball in the direction of the defendant. The ball struck the defendant on the chin, words were exchanged, and the defendant proceeded to punch the plaintiff in the jaw. The plaintiff suffered unusually severe fractures. His jaw was broken on both sides of his face and his jaw had to be wired shut for twelve weeks. The plaintiff also retained facial scars. In that case, the Supreme Court found that the evidence supported a determination that the defendant was negligent, and that the plaintiff's serious bodily injury was not intended or expected from the insured's standpoint. The Breland Court also established the following parameters in interpreting an exclusion policy:
[W]hen minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more sever injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Id. at 614.
Although Pique and Breland give greater insight as to how intent or the severity of the injury should be viewed in the interpretation of exclusion policy cases, Pique also demonstrates that the interpretation *53 of insurance policies is based on the language agreed to by the parties. The following quote indicates that the Pique Court considered the specific language in the policy in its review:
The policy provision excluding coverage for bodily injury expected or intended by the insured is ambiguous. An expected injury may be one which is highly likely, probable or substantially certain to happen. Accordingly, the exclusion could be interpreted to bar recovery for either intentional and negligent injuries or only an intentional injury. In accordance with the settled principle that ambiguity in an instrument is resolved against the draftsman, we construe the policy language to exclude coverage only for intentional injuries.
Pique, 450 So.2d at 655.
Breland also establishes that the interpretation of specific language within the provision lies with the trier of fact, by stating that:
Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact ...
Breland, 550 So.2d at 614
In both cases, the Supreme Court looked to the policy language first, and this is the approach we shall use in the instant case. Reviewing the plain language of the policy, it is clear that Allstate did not agree to cover any bodily injury which resulted from the intended or reasonably expected criminal acts of the tortfeasor/insured, regardless of the degree of injury intended or expected. Ms. King's ankle was broken in the midst of an altercation between herself and Mr. Galloway. Whether Ms. King was struck once or twice, either with a fist or open-hand, or was spun around to prevent her escape; or whether her feet were entangled with Mr. Galloway's feet in an attempt to escape his wrath, causing her ankle to break, is insignificant. The point is that all events were a part of the same occurrence, or battery upon Ms. King. Mr. Galloway clearly intended to harm Ms. King to the extent that she may have broken her ankle as he struck her and violently spun her around. Both Ms. King and Mr. Galloway acknowledge that he struck her immediately preceding the breaking of Ms. King's ankle. Further, Mr. Galloway even admitted to his guilt in abusing Ms. King by pleading guilty to criminal charges of simple battery, which includes the element of intent. Clearly, the injury sustained by Ms. King is not covered under the Allstate policy. This is a reasonable interpretation of the Allstate policy as it relates to these facts. Thus, we find that the district court did not err in granting the Motion for Summary Judgment, dismissing Allstate from this suit with prejudice.

Decree
For the reasons stated herein, we affirm the judgment of the district court granting the Motion for Summary Judgment dismissing Allstate Insurance Company from this suit with prejudice.
AFFIRMED