846 So.2d 88 (2003)
Jessie K. YOUNG, Plaintiff-2nd Appellant,
v.
Thomas R. BROWN, Defendant-Appellee, and
Allstate Insurance Company, Defendant-1st Appellant.
No. 37,053-CA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
Rountree, Cox, Guin, & Achee By Dale G. Cox, Shreveport, for 1st Appellant, Allstate Insurance Co.
William D. Hall, for 2nd Appellant, Jessie Keith Young.
*89 Zelda Tucker, Shreveport, for Appellee, Thomas R. Brown.
Before BROWN, STEWART, and KOSTELKA (Pro Tempore), JJ.
BROWN, C.J.
According to the trial court, "[W]hat this case is about is two drunks going bump in the night versus an intentional effort at injuring." One drunk was armed, the other was shot. Plaintiff, Jessie Keith Young, filed suit against the person who shot him, Thomas R. Brown, and Brown's insurer, Allstate Insurance Company ("Allstate").[1] Brown was charged with and pled guilty to negligent injuring. In an appeal from a grant of summary judgment, this court reversed and remanded for trial to determine whether the injuries resulted from an intentional act, as opposed to an unintentional criminal act, such as negligent injuring. Young v. Brown, 27,018 (La.App.2d Cir.06/21/95), 658 So.2d 750, writ denied, 95-1811 (La.10/27/95), 662 So.2d 1. Finding that Brown did not intend to shoot anyone, the trial court rendered judgment in favor of Young, allocating 35% fault to Young and 65% fault to Brown. Both Allstate and Young have appealed. We affirm.

Factual Background
Around 1:30 a.m. on June 12, 1993, Brown drove Ruth Yates home following a night of barroom revelry. They were sitting in Brown's pickup truck on the street in front of Yates' home when Young and a group of his friends parked in Yates' driveway. Young and Yates knew each other. Young, who also had been drinking heavily, went to the passenger's side of Brown's truck and began to argue with Yates. The quarreling escalated, and Young grabbed the passenger's side windowsill of the truck. At this point, Brown, who did not know Young, got out of his truck armed with a loaded 22 caliber revolver. As Brown walked around the front of his truck, Young's friends came toward him. Brown fired what he described as a warning shot into the pavement. Young's friends quickly dispersed. Hearing the gunshot, Young fled around the front of the truck and collided with Brown. The gun discharged and Young was shot.
According to Brown, immediately after Young was shot, one of Young's friends ran back to Brown and started hitting him. While he was being struck, Brown claims to have put the gun away so no one else would be shot. Brown then fled the scene and went home. Young was taken to the LSU Medical Center emergency room, where he underwent colon surgery and was hospitalized for 18 days. Later that same morning, Brown surrendered to the Shreveport police. He was charged with and pled guilty to negligent injuring.

Procedural History
Young filed a damage lawsuit against Brown and Allstate. At the time of the injury, Brown was covered by a homeowner's and public liability insurance policy written by Allstate. This policy excluded damages resulting from an insured's intentional or criminal acts.
Based on the policy exclusion for "criminal" acts, Allstate moved for summary judgment. Referencing Brown's guilty plea to the charge of negligent injuring, Allstate argued that the acts leading to Young's injury were criminal in nature, and therefore coverage was excluded under the policy. The trial court granted summary judgment in favor of Allstate. Young appealed and this court reversed, *90 finding that while the policy clearly denies coverage for intentional acts that cause injury and for injuries specifically intended by the insured, there was coverage for non-intentional, inadvertent acts of criminal negligence. Young, supra.
On remand, it was stipulated that the claim for damages did not exceed $50,000. A bench trial was held on the issue of whether Brown intentionally shot Young. Brown and Shreveport Police Officer S.W. Plunkett, who investigated the incident, testified at trial. Young, who was incarcerated on drug charges in Bienville Parish, testified via deposition. Allstate retained Dr. Stephen Cogswell, a forensic pathologist, to reconstruct the shooting. He testified by video deposition.
After closing arguments, the trial court ruled in favor of Young, awarding damages at the stipulated limit of $50,000, and allocated 35% fault to Young and 65% fault to Brown. Accordingly, Young was awarded $32,500 in damages. Costs were apportioned according to the assigned percentages of fault. Allstate filed the instant suspensive appeal. Young filed a devolutive appeal questioning the allocation of any fault to himself.

Discussion
Standard of Review
If a trial court's findings of fact are reasonable, a reviewing court may not reverse such findings even if it is convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Intentional Acts Exclusion
Allstate's policy at issue in the instant case states in part:
We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
The question presented is whether Brown intended to cause Young's injuries. As with any exclusion in an insurance policy, the insurer bears the burden of proving that the intentional injury provision is applicable. Great American Insurance Co. v. Gaspard, 608 So.2d 981 (La.1992); Breland v. Schilling, 550 So.2d 609 (La.1989).
In Pique v. Saia, 450 So.2d 654, 655 (La.1984), the supreme court defined what it meant by intentional injury:
An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Bazley v. Tortorich, 397 So.2d 475 (La.1981); W. Prosser, Law of Torts § 8 (4th ed.1971); Restatement (Second) of Torts, American Law Institute § 8A (1965).
The test enunciated in Pique was subsequently modified in Breland, supra. In Breland, the defendant struck plaintiff in the jaw with his fist during a ball game. The Breland court reasoned that the subjective intent of the insured is the key and not what the average or ordinary reasonable person would expect or intend. (Emphasis added). An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Breland, supra, quoting United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 989 (1986).
*91 Allstate argues that Brown's insurance policy did not cover him for Young's claims because Brown intentionally shot and injured Young. Allstate notes that Brown, who was 6' 1" and weighed 260 pounds, was a much larger man than Young, who was 5' 6" and weighed 167 pounds. Brown was also the only participant in the incident who was armed. It points out that after Brown fired his first shot into the pavement, he cocked the hammer, pulled the trigger, and used his thumb to hold the hammer back. Thus, the revolver would instantly fire if he released the hammer. The gun was positioned in this way, i.e., ready to easily discharge, when Brown faced Young. Allstate argues that the manner in which Brown handled the gun was so reckless that it was substantially certain to fire.
When Young was shot, the bullet entered Young's left lower abdomen and traveled upward and to the right at a 45 degree angle; the bullet exited Young's back at the left rear shoulder blade. One of the issues at trial was the position of Brown and Young at the time of the shooting. Dr. Cogswell opined that if both men were standing and in physical contact at the time the gun was discharged, the bullet trajectory would have been either horizontal or downward which is inconsistent with the actual trajectory.
Dr. Cogswell believed that Brown was standing over Young, who was lying prostrate on the ground when he was shot. Both of the opposing parties, Brown and Young, testified that they were standing when the shot was fired. We note that none of Young's friends or Ms. Yates testified. The trial court rejected Dr. Cogswell's account and found that the angle of the gun itself was the critical factor. Brown was stooped as he came around the front of his truck and collided with Young. Thus, the gun could have been pointed upward.
Allstate further argues that Brown is an untrustworthy witness because he gave several inconsistent versions of the shooting. It contends that Brown gave different narrations of the incident to Officer Plunkett; Leland Brown, his friend; Steve McEachern, an Allstate representative; and in his pre-trial deposition and trial testimony. We note that despite variations in Brown's version of the events, he has never said that Young was lying on the ground and he was standing over him when Young was shot. In fact, no one, other than Dr. Cogswell, testified to this alleged positioning of the parties.
Allstate also maintains that Young's testimony is not credible because he is a convicted felon and he admitted he drank 16 beers and some whiskey on the night he was shot. However, despite Young's inebriated state, his version of the events coincided with Brown's. Young testified that at the time he was shot neither he nor Brown were on the ground. Young also corroborated Brown's account that the two had collided in front of Brown's truck when the gun fired.
Allstate also urges that the trial court should place no emphasis on Young's testimony that he had powder burns as a result of the shooting, which would indicate close physical contact. During his deposition, Young stood up and showed where the bullet entered his abdomen. Stippling, or discolored markings, were noted to be present around this site. Young claimed that these scars were from powder burns.
Allstate also urges that in his post-Miranda statement to Officer Plunkett, Brown admitted that he intentionally fired his revolver. What Officer Plunkett wrote was that the "suspect raised (his) gun and fired." The trial court weighed this statement with Brown's trial testimony *92 and the other evidence and held that Brown did not intentionally shoot Young. In its oral reasons for judgment, the trial court specifically found:
[T]he testimony from both sides was that it wasn't intentional. I'll tell you what struck me, and that was that he fired a shot into the ground. He didn't fire it at the three people that he testified were coming at him. He fired a warning shot. He testified that the gun discharged when he and the plaintiff ... the defendant and the plaintiff ... as a surprise to the defendant, bumped into each other.
And, then, after he shot him, he took a beating rather than shoot somebody else. And I believe him when he says this, he got punched as he was trying to put the gun down, which indicates to me, once he realized this group of people weren't armed, he quit trying to shoot anybody.
I don't think he ever really intended to shoot anybody. He quit ... trying to use the gun in the altercation. He fired one shot into the ground instead of at somebody, the gun went off when the twowhen they impacted. And then he had punches landed on him, basically took a whipping trying to put the gun up so somebody else didn't get shot. That doesn't strike me as somebody who is intentionally trying to shoot anybody.
* * *
[W]hat this case is about is two drunks going bump in the night versus an intentional effort at injuring.
The subjective intention of Brown was indeed a question of fact which falls within the trial court's vast discretion. See Stobart, supra. We take cognizance that where conflicting testimony is presented, the trial court's reasonable evaluations of credibility and inferences of fact should not be disturbed on appeal. The trial court was not manifestly erroneous in rejecting Dr. Cogswell's expert opinion and accepting the testimony of Brown and Young. Thus, we uphold the trial court's factual findings and witness evaluations. We cannot say the trial court was manifestly erroneous in finding that Brown did not intend to inflict injury upon Young. Accordingly, coverage under Brown's insurance policy for Young's resultant damages is not barred.
Comparative Fault
In his appeal, Young urges that the trial court erred in finding him negligent and assigning 35% fault to him. He argues that he should not have been assigned any comparative fault in this matter and claims "he did not advert to or consciously consider the risk of the danger presented by Brown's actions." In the alternative, Young submits that if he is assessed with any fault, it should be reduced to no more than 10%. Young also urges in a separate assignment of error that the trial court erred in its assessment of 35% of the total court costs to him.
Finding that Young was involved "quite vigorously and actively" in the precipitating events, the trial court allocated 35% fault to Young and 65% fault to Brown. After reviewing the evidence presented to the trial court, we cannot say that the trial court's apportionment of fault between Young and Brown was either unreasonable or unsupported by the evidence. By arming himself, Brown created a great risk; nonetheless, Young's proclivity for reckless conduct contributed to his own injury. In his inebriated state, Young's loud and violent behavior understandably raised concern on the part of Brown for the safety of his passenger and himself. After Brown fired the first warning shot into the pavement, Young, on his own volition, ran toward *93 the front of the truck and collided straight into the armed Brown.
Accordingly, we will not disturb the apportionment of fault.

Conclusion
For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed to insurer/appellant, Allstate Insurance Company.
AFFIRMED.
NOTES
[1] Although Brown testified at the instant trial, he was not served, nor did he answer as a party. Allstate appointed him a conflict counsel, who was present at the trial; however, she was there only to monitor the case.