943 So.2d 632 (2006)
BRIDGEFIELD CASUALTY INSURANCE COMPANY, Plaintiff-Appellee,
v.
Janice TRIPP and Allstate Fire and Casualty Insurance Company, Defendant-Appellee.
No. 41,483-CA.
Court of Appeal of Louisiana, Second Circuit.
November 9, 2006.
Rehearing Denied December 7, 2006.
Lynn Edward Estes, Jr., Shreveport, for Intervenor-Appellant, Robin Peters.
John Avender London III, Baton Rouge, for Plaintiff-Appellee, Bridgefield Casualty Insurance Company.
Law Offices of Harold G. Toscano by Steven Curtis Mitchell, Baton Rouge, for Defendant-Appellee, Allstate Insurance Company.
Before WILLIAMS, CARAWAY and DREW, JJ.
DREW, J.
Robin Peters appealed the summary judgment dismissing Allstate Insurance Company from the suit based upon the policy exclusion for intentional harm. For the following reasons, we affirm.
Employed at Holmes Honda as a service consultant, Robin Peters was injured on the job in an altercation with Janice Tripp, a customer of the automobile dealership. Bridgefield Casualty Insurance Company paid Peters worker's compensation benefits. Allstate Insurance Company was Tripp's homeowner liability insurer. Bridgefield sued Tripp and Allstate for reimbursement of its payments. Peters intervened seeking damages from Tripp and her insurer. Tripp was never served and is not a party to this suit. La. C.C.P. art. 6. Jurisdiction over the person is legal authority of court to render judgment and must be based upon service of process or submission of party to exercise of jurisdiction over that party personally, or upon waiver of that party's objections. *634 Webb v. Webb, 28,411 (La.App. 2 Cir. 6/26/96), 677 So.2d 630, writ denied, 1996-2274 (La.11/15/96), 682 So.2d 774.
Allstate filed a motion for summary judgment to have the suit dismissed because Tripp's policy with Allstate excluded liability coverage for intentional acts. Specifically, the policy stated:
Losses We Do Not Cover Under Coverage X:
1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
a) such insured person lacks the mental capacity to govern his or her conduct;
b) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or
c) such bodily injury or property damage is sustained by a different person than that intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.
Accompanying Allstate's motion and its supporting memorandum were its policy issued to Tripp and Peters' deposition, in which she described her encounter with Tripp.
Employed at Holmes Honda as a service technician for eight years, Peters stated she took information from customers and created a paper record for technicians to use to diagnose the service needed. Peters, in turn, reported the findings to the customer and "sold the repairs." Peters also answered inquiries during service and dealt with the customer when the car was returned. Peters further said:
 The day before the incident on July 24, 2003, Tripp brought in an early 1990s Honda Accord for service. A salesman who was dating one of Tripp's relatives brought Tripp to the service area and informed Peters what Tripp wanted done. Tripp could not speak due to a stroke. Tripp left a signed check to be filled in with the amount of the service charges.
 Peters learned after their altercation that Tripp purchased a used Honda Passport after leaving her car for service and presumably left the dealership in that Passport.
 Tripp's car was ready when Tripp arrived in the Passport and parked in Lane 2 of the service area.
 Peters approached Tripp, who was seated in the Passport, showed her the amount for which her check written, and requested her signature on the dealership's paperwork showing that Tripp had taken delivery of her Accord.
 Tripp showed Peters her checkbook in which she had written a down payment for the Passport. Tripp gestured to Peters, who could not understand what Tripp wanted; Peters learned later Tripp wanted to return the Passport, which Peters did not know Tripp had purchased the day before.
 Tripp became frustrated because she could not get Peters to understand what she wanted. Tripp signed the papers but wanted Peters to make her two copies. The miscommunication continued for about 30 minutes during which Tripp was seated in the Passport.
 Peters got "aggravated with her" and when she had the opportunity, Peters reached in and "kind of snatched" the papers from Tripp while telling her she would make Tripp's copies.
*635  Peters backed up four or five steps while Tripp exited the vehicle, advanced, and grabbed Peters around her upper body in a bear hug. Peters asked Tripp to release her and Tripp did so.
 Describing the encounter as "two-year-old keep-away," Peters said she kept the papers behind her as Tripp tried to get them. Peters continued to back away and was against the wall when Tripp grabbed her the second time. "And that's when I dipped down and pivoted and just twisted my body to get away from her. And I think in the struggle I may have lifted her up off the ground, you know, just trying to break her grasp."
 Peters retreated to the service manager's office for help and her manager took over dealing with Tripp. Eventually, Tripp took her Accord and left the premises.
 Peters stated she did not believe that Tripp was trying to hurt her but was frustrated over her inability to communicate and attempting to retrieve the paperwork.
In opposing Allstate's motion for summary judgment, Peters attached Allstate's answers to interrogatories which stated the reason Tripp grabbed Peters was unknown to Allstate. Since Allstate responded "none at this time" to Peters' request for production of any witness statements, Peters argued that Allstate had not taken Tripp's statement and could not know Tripp's intent. Without knowing Tripp's subjective intent, Peters contended that the exclusion for intentional behavior could not be applied.

DISCUSSION
In Hill v. Shelter Mut. Ins. Co., XXXX-XXXX (La.7/10/06), 935 So.2d 691, 693-694, the supreme court set out the well-settled rules concerning interpretation of insurance policies; i.e., insurance policies are contracts between the parties and should be interpreted using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, the policy must be enforced as written. Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Herzog Contracting Corp. v. Oliver, 40,342 (La. App.2d Cir.12/16/05), 918 So.2d 516.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Shelter Insurance Company v. Broan-Nutone, LLC, 39,625 (La.App.2d Cir.5/11/05), 902 So.2d 1146, writ denied, XXXX-XXXX (La.12/16/05), 917 So.2d 1112.
*636 Peters correctly stated that the appellate record is devoid of evidence concerning Tripp's intentions. However, Peters' reliance on Young v. Brown, 37,503 (La. App.2d Cir.4/9/03), 846 So.2d 88, is misplaced. The Allstate policy in Young contained different exclusion language:
We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
In Young, supra, this court explained that the insurer has the burden to prove that the intentional injury exclusion applies. An intentional injury results from an intentional act only when the doer either consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct, or knew that the result is substantially certain to follow from his conduct. The subjective intent of the insured is the key and not what the average or ordinary reasonable person would expect or intend. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Young, supra.
As previously noted, Tripp's Allstate policy contained significantly different exclusion language and does not cover any bodily injury intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any insured person, even if such bodily injury differed from the kind or degree than intended or reasonably expected. In essence, this strict exclusionary language makes subjective intent irrelevant if injury results from an intentional act.
In Landry v. Bellanger, XXXX-XXXX (La.5/20/03), 851 So.2d 943, the supreme court stated that a battery is harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to receive such a contact. The defendant's intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. All intended wrongs have in common the element that they are inflicted without the consent of the victim. Doe v. Breedlove, XXXX-XXXX (La.App. 1st Cir.2/11/05), 906 So.2d 565.
In King v. Galloway, XXXX-XXXX (La. App. 4th Cir.9/11/02), 828 So.2d 49, writs denied, 2002-2598 (La.11/27/02), 831 So.2d 281, 2002-2510 (La.11/27/02), 831 So.2d 283, the Allstate exclusion was identical to the exclusion in Tripp's policy. The victim's ankle was broken during a domestic disturbance. The Allstate policy excluded coverage for King's bodily injury resulting from Galloway's intended criminal acts regardless of the degree of injury intended or expected.
The identical Allstate exclusion language was interpreted in Fontenot v. Duplechine, 2004-424 (La.App. 3d Cir.12/8/04), 891 So.2d 41, in which one student hit another in the head with a desk top. The court observed that the Allstate exclusion was not ambiguous and provided no coverage for intentional acts and the expected and unexpected results of those intentional acts.
While the intentional acts in King, supra, and Fontenot, supra, were more dramatic than Tripp's twice hugging Peters, the result is the same. In an apparent effort to retrieve paperwork, Tripp grabbed Peters without her permission and on Peters' request, released her the first time. Tripp then continued to approach Peters and gave her a bear hug from which Peters was injured in her efforts to free herself. Peters acknowledges that she does not believe Tripp intended to injure her. However, for reasons that are *637 not clear, Tripp clearly intended to touch Peters without Peters' consent. While Peters' injuries were unexpected, the Allstate policy excludes coverage under these circumstances.
La. C.C.P. art. 966(C)(1) requires that "adequate discovery" has occurred before a party may file a motion for summary judgment. Peters' contention that the trial court erred in granting Allstate's summary judgment due to inadequate discovery is without merit. Peters intervened in Bridgefield's action on May 27, 2005. Allstate filed its motion for summary judgment on September 12, 2005. The summary judgment was not signed until March 29, 2006. Allstate correctly pointed out that Peters' own deposition and allegations contained within her pleadings established that there is no coverage under the terms of this Allstate policy. Tripp twice grabbed Peters without Peters's consent, and Peters was injured in freeing herself. The non-moving party, Peters, failed to produce evidence of a material factual dispute which would have made the summary judgment inappropriate. The Allstate policy unambiguously excluded coverage for this apparently unintended injury resulting from Tripp's grasping Peters on two separate occasions.

DECREE
The summary judgment of the trial court is affirmed at Robin Peters' costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY and DREW, JJ.
Rehearing denied.
BROWN, J., would grant rehearing.