MICHAEL MCCREA AND ROBERTA MCCREA
v.
RAYMOND L. MARICHE, JR. and ALLSTATE INSURANCE COMPANY
2008 CA 0074.
Court of Appeals of Louisiana, First Circuit.
June 6, 2008.
NOT DESIGNATED FOR PUBLICATION
BRAD J. BRUMFIELD, Counsel for Defendant/Appellant, Allstate Insurance Company
JOHN B. PERRY, Counsel for Plaintiffs/Appellees, Michael and Roberta McCrea
Darrin M. O'Connor, Counsel for Defendant/Appellee Raymond L. Mariche, Jr.
BEFORE: WHIPPLE, GUIDRY, AND HUGHES, JJ.
HUGHES, J.
This is an appeal of a judgment of the 22nd Judicial District Court finding a homeowner, Raymond L. Mariche, Jr., 100% at fault in causing an injury sustained by plaintiff/appellee, Officer Michael McCrea. Additionally, the judgment held that Mr. Mariche's homeowner's liability insurance policy provides coverage for the injury that he caused. Appellant, Allstate Insurance Company (Allstate), appeals that portion of the judgment finding coverage under the policy. For the following reasons, we reverse that portion of the judgment.

FACTS AND PROCEDURAL HISTORY
On January 14, 2005, Officer Michael McCrea, a police officer with the St. Tammany Parish Sheriffs Office, responded to a 911 domestic disturbance call. When Officer McCrea first arrived at the home he was alone and he observed Mr. Mariche coming out of the garage. Officer McCrea asked Mr. Mariche what was going on. Mr. Mariche responded by shouting "[n]one of your business," jumping the fence into the backyard, and ordering his German shepherd to attack Officer McCrea. Once another officer arrived to assist Officer McCrea, the two officers attempted to talk to Mr. Mariche to calm him down. Mr. Mariche continued "yelling and screaming" and ordered the dog to attack.
Meanwhile, Officer McCrea had observed, through a window of the home, a woman with a child who he presumed to be Mr. Mariche's wife and son. Officer McCrea noticed that Mr. Mariche was "trying to get to them," and when he saw Mr. Mariche "open the window and try to go inside," he and the other officer ran to the front of the house and kicked in the locked front door. The woman, Ms. Mariche, ran outside without the child and told the officers that her husband was in the back room. The officers found Mr. Mariche standing on a pile of clothes with his child in his arms. They continued their attempts to calm Mr. Mariche, but he only became more angry and irate. He stuck his right arm out and shoved or pushed Officer McCrea in the chest. Officer McCrea grabbed Mr. Mariche's wrist and they fell to the ground.
Officer McCrea hurt his hand in the fall and he filed suit against Mr. Mariche for the damages. The petition was later amended to name Allstate, as the homeowner's liability insurance provider for Mr. Mariche. Allstate filed a motion for summary judgment alleging that the policy excluded coverage for the January incident. The motion was denied, however, and trial was held on August 27, 2007. Judgment was rendered in favor of Officer McCrea and against Mr. Mariche and Allstate specifically finding that the Allstate policy provided coverage for the injuries resulting from Mr. Mariche's actions. Allstate appeals the judgment only on the issue of whether the policy provides coverage for bodily injury resulting from the intentional acts of Mr. Mariche.

LAW AND ARGUMENT

A. Standard of Review and Contract Interpretation
The issue of whether the Allstate policy provides coverage for Officer McCrea's injury presents a question of law as it is governed by the law of contract interpretation. Appellate review of legal questions simply involves a de novo determination whether the trial court's decision was legally correct. Sumrall v. Bickham, 03-1252, p. 7 (La. App. 1 Cir. 9/8/04), 887 So.2d 73, 78, writ denied. 04-2506 (La. 1/7/05), 891 So.2d 696. If, however, the court is required to make factual determinations regarding whether the actions of the insured constitute an intentional tort, appellate review of those factual determinations is governed by the manifest error-clearly wrong standard. Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993).
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Smith v. Matthews, 611 So.2d 1377, 1379 (La. 1993). See also Jenkins v. CNA Ins. Co., 98-0022, pp. 4-5 (La. App. 1 Cir. 12/28/98), 726 So.2d 71, 74. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Jenkins, 98-0022 at p.5, 726 So.2d at 74. Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Id. Even so, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Id.

B. Historical Jurisprudence
In 1989 the Louisiana Supreme Court issued a memorable and noteworthy opinion and held that a homeowner's liability insurance policy provided coverage for injuries sustained as the result of a jaw punch intentionally thrown by the homeowner during an Old Timers League softball game. Breland v. Schilling, 550 So.2d 609, 58 USLW 2282 (La. 1989). The court was called upon to interpret policy language that excluded coverage for "bodily injury...which is either expected or intended from the standpoint of the insured." Breland, 550 So.2d at 609, 610. In its thorough and well-written opinion, the court reasoned that the use of that particular language mandated the application of a subjective analysis as to the insured's intentions or expectations of injury as opposed to the insured's intentions to act. Breland, 550 So.2d at 611, 614. The court noted that, as written, the policy did not exclude all injuries that flow from an intentional act, but only those injuries "which the defendant subjectively desired to inflict." Breland, 550 So.2d at 611-613.
Closely following Breland was Yount v. Maisano, 627 So.2d 148 (La. 1993), wherein the supreme court revisited the issue. Under the identical policy exclusionary language, the court in Yount found that the language effectively precluded coverage for the injuries sustained by the victim. Yount, 627 So.2d at 153. In reaching that holding, the court differentiated Breland, a case where the insured did not "intend nor expect" the damages that resulted, from Yount, a case of a long, deliberate, and intentional "revenge" beating. Yount, 627 So.2d at 151.

C. Recent Jurisprudence
But Breland and Yount did not fall on deaf ears. Insurance policy drafters quickly reconstructed the exclusion at issue, known today as the intentional acts exclusion. The policy language that the Breland court read as mandating a subjective intent analysis is now nearly obsolete and has been replaced in most policies with language similar to the language found in the Allstate policy before us. The Allstate exclusion reads as follows:
We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
a) such insured person lacks the mental capacity to govern his or her conduct;
b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.
Presumably, this language is a direct response to the Breland and Yount holdings. As a result, recent courts have utilized a new analysis and, in most cases, have reached a different result.
This circuit analyzed the new language in Kimble v. Allstate Insurance Company, XXXX-XXXX (La. App. 1 Cir. 4/8/98), 710 So.2d 1146. The insured in Kimble, a paranoid schizophrenic, who all concerned agreed was "legally insane" at the time of the accident, shot and killed his roommate. Kimble, 710 So.2d at 1147, 1148. This court upheld the trial court's finding that the new exclusionary language precluded recovery for intentional torts committed by insureds, regardless if the insured "lacks the mental capacity to govern his or her conduct." Kimble, 710 So.2d at 1148. Simply put, even though the court found that Louis, an insured paranoid schizophrenic, committed an act that is classified as an intentional tort, the exclusionary language was clear and precluded recovery. Kimble, 710 So.2datll48, 1149.
Moreover, the Kimble court also rejected plaintiffs' argument that the new exclusion violated public policy, noting that an insurance policy is a contract between the parties and that Allstate has the right to limit its liability. Its liability limitations, therefore, are not in conflict with public policy or the laws of the State of Louisiana. Kimble, 710 So.2d at 1149.
Likewise, the second circuit has also held that the newer language before us "makes subjective intent irrelevant if injury results from an intentional act." Bridgefield Casualty Insurance Company v. Tripp, 41,483 (La. App. 2 Cir. 11/9/06), 943 So.2d 632, 636. Ms. Tripp committed a battery upon a woman who testified that she did not believe Ms. Tripp intended to hurt her. Bridgefield, 943 So.2d at 635. Ms. Tripp could not be located and so was unable to testify herself. Bridgefield, 943 So.2d at 633. Nevertheless, the second circuit found that Ms. Tripp's subjective intent was irrelevant under the policy language since it excludes coverage for all intentional torts committed by insureds. Bridgefield, 943 So.2d at 636.
The court found that Ms. Tripp committed a battery by grabbing the plaintiff without her consent and that battery is an intentional act. Bridgefield, 943 So.2d at 636-637. In reaching that conclusion, the court cited the supreme court in Landry v. Bellanger, XXXX-XXXX (La. 5/20/03), 851 So.2d 943, as followed by the First Circuit in Doe v. Breedlove, XXXX-XXXX (La. App. 1 Cir. 2/11/05), 906 So.2d 565:
battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to receive such a contact. The defendant's intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. All intended wrongs have in common the element that they are inflicted without the consent of the victim.
Since the act of battery is an intentional tort, and the injury resulted from that intentional tort, recovery for the injury is precluded by the policy.[1]
Further, both the Third and Fourth Circuits have also considered recent revisions to the policies and agree that the new exclusion provides no coverage for the intentional acts of the insured, nor the expected and unexpected results of those intentional acts. King v. Galloway, XXXX-XXXX (La. App. 4Cir. 9/11/02), 828 So.2d 49, writs denied, 2002-2598, 2002-2510 (La. 11/27/02), 831 So.2d 281, 283, (victim's ankle broken in a domestic dispute); Fontenot v. Duplechine, 2004-424 (La. App. 3 Cir. 12/8/04), 891 So.2d 41 (student hit another in the head with a desk top).

D. Battery as an Intentional Tort
It is uncontested that Mr. Mariche committed a battery upon a police officer. The evidence introduced by the plaintiff himself overwhelmingly establishes that fact. At trial, Officer McCrea testified as follows:
Q. In your lawsuit, which was read to you, that's called a petition?
A. Yes, sir.
Q. The sworn deposition that you gave about a year ago?
A. Yes, sir.
A. And what you showed us today, have you consistently said Mr. Mariche pushed you
A. Yes, sir.
Q. with his right hand?
A. Yes, sir.
Q. And you fell down?
A. Yes, sir.
Q. And that's when you hurt your right hand?
A. Yes, sir.
And in his deposition, Officer McCrea gave a similar account:
Q. But he did shove you to the ground?
A. Yes, sir, he did.
Q. And that's when you hurt your hand?
A. Yes, sir.
Finally, when questioned by Allstate's attorney, Officer McCrea does not dispute that the push was a battery and a criminal act:
Q. And when he shoved you, would that be a battery on you, sir?
A. Yes, sir, I guess it could be.
Q. Would that also be a criminal act?
A. Yes, sir.
Mr. Mariche does not dispute Officer McCrea's testimony. As Mr. Mariche was admittedly intoxicated, he was unable to recall the events of that day and was therefore unable to offer any bit of contradictory testimony:
Q. At the time Officer McCrea was injured, did you have any intention to hurt Officer McCrea?
A. Uh, I don't remember any, any part of that incident as far as any kind of physical confrontation with any officer.
Q. Okay. Do you know if you had any intent to hurt anybody the night of the incident?
A. Uh, from what I remember from that night, I had no intentions of hurting anyone from the time I left the house until  I just don't remember anything.
Because the policy language is clear that the exclusion applies even if the insured "lacks the mental capacity to govern his or her conduct," Mr. Mariche's intoxication does not change the result. He was charged with and pleaded guilty to committing a battery upon Officer McCrea. Battery is an intentional tort and the injury that resulted therefrom is excluded from coverage under the policy, regardless of the kind or degree.
We also note that at oral argument, appellant's counsel seemingly took the position that the trial court found that Mr. Mariche's actions were not intentional, but were accidental. However, the language of the judgment makes no mention of the court's characterization of the January event. The court's oral reasons for judgment state that "the court is convinced by the testimony of the witnesses that the defendant, Mr. Mariche, did not intend the consequences, the consequences of his actions were not reasonably expected to result from this actions [sic]; therefore, I find that there is coverage for his homeowner's that would apply in this case." (Emphasis added.)
The court did not find that Mr. Mariche did not commit a battery, but rather that he did not intend the injury that resulted from the battery. While this may have resulted in coverage under policy language similar to that in the Breland case, the policy language before us is clear that it does not provide coverage for injuries caused by the intentional, criminal acts of the insured.[2]
According to Officer McCrea, Mr. Mariche was drunk and he was yelling, screaming, and irate. He had attempted twice to have his dog attack Officer McCrea. Mr. Mariche's intoxication is no defense to his actions. Recent jurisprudence and the new policy language establish that his subjective intent is of no moment. It is undisputed that Mr. Mariche was charged with and pleaded guilty to battery on a police officer, an intentional criminal act and a violation of LSA-R.S. 14:34.2(A). We therefore find that the trial court erred in finding that the policy of insurance provided coverage for an injury resulting from an intentional, criminal act of Mr. Mariche, the insured.

CONCLUSION
Mr. Mariche committed the intentional act of battery upon Officer McCrea which resulted in injury to his hand. The Allstate policy at issue excludes coverage for intentional torts committed by the insured and therefore bars coverage for Officer McCrea's injury. The portion of the judgment of the trial court finding coverage for Officer McCrea's injury under the Allstate policy is reversed. All costs of this appeal are assessed against the plaintiff, Officer McCrea.
REVERSED IN PART.
NOTES
[1] We also note and distinguish the case of Inzinna v. Walcott, XXXX-XXXX (La. App. 1 Cir. 11/21/03), 868 So.2d 721, 726, wherein the court found that the insured's act was negligent as opposed to intentional. Specifically, the court found that the insured acted "spontaneously and instinctively to a sudden physical encounter, without time to form the requisite intent to commit a specific act."
[2] Because we have determined that the lower court erred only in its interpretation of the policy language, the applicable standard of review is simply a de novo review,