STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-424


MICHAEL R. FONTENOT

VERSUS

KIPP L. DUPLECHINE, ET AL.


**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 02-C-0989-A
HONORABLE JAMES T. GENOVESE, DISTRICT JUDGE

**********
JOHN B. SCOFIELD
JUDGE
**********


Court composed of Sylvia R. Cooks, Marc T. Amy, Michael G. Sullivan, Elizabeth
A. Pickett, and John B. Scofield, Judges.[*]


**REVERSED IN PART; AMENDED IN PART; AND RENDERED.**


Amy, J. - Concurs in part, dissents in part and assigns written reasons.
Sullivan, J.-Concurs.
Pickett, J.-Concurs and assigns written reasons.


**Adam Gerard Caswell**
**Attorney at Law**
**P. O. Box 1600**
**Eunice, LA 70535**
**Counsel for Plaintiff/Appellee:**
    **Michael R. Fontenot**

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**Christopher Shannon Hardy**
**Penny & Hardy**
**P. O. Box 2187**
**Lafayette, LA 70502-2187**
**Counsel for Defendant/Appellant:**
    **Allstate Insurance Company**

**Brad Jeremy Brumfield**
**Smith and Brumfield, L.L.C.**
**7576 Goodwood Blvd**
**Baton Rouge, LA 70806**
**Counsel for Defendant/Appellee:**
    **Kipp L. Duplechine**

SCOFIELD, Judge.[1]

Defendants, Kipp Duplechine and Allstate Insurance Company (Allstate) appeal a judgment of the district court awarding Plaintiff, Michael R. Fontenot, general and special damages as a result of a physical altercation between Mr. Duplechine and Mr. Fontenot. We reverse in part, amend in part, and render.

## FACTS

During the first period after lunch on March 17, 2001, Kipp Duplechine and Michael Fontenot, both seniors at Opelousas Catholic High School, were involved in a physical altercation. Earlier in the day, Fontenot had made an unkind remark about Melanie Babin, a friend of Duplechine's, who had become debilitated after being involved in an automobile accident. Upon learning of the remark, Duplechine began looking for Fontenot. It wasn't until the two boys arrived at Fine Arts class, that they met. Fontenot was seated in his desk when Duplechine came in, carrying a volleyball. Duplechine approached Fontenot told him that he had better not make any more disparaging remarks about Melanie or there would be trouble. To emphasize his point, Duplechine threw the volleyball striking Fontenot on the chest. Duplechine then turned and started toward his own desk. Fontenot picked up the ball and threw it back at Duplechine. Duplechine claims that Fontenot called to him, and as Duplechine turned, the ball hit him in the face. Fontenot claims that Duplechine was walking away when he threw the ball and that it hit Duplechine in the back. In any event, the return throw by Fontenot caused Duplechine to turn and rush at Fontenot. Fontenot "covered up" his head and face while Duplechine, using his fists, rained numerous blows on Fontenot's head and upper body. Several of Duplechine's

[1]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

friends interceded and pulled Duplechine away from Fontenot. Sometime during the altercation, the top of Fontenot's desk was pulled off. It is unclear if Duplechine pulled it off and walked away with it or if the desktop fell to the floor and he picked it up. But, in either event, Duplechine ended up with the desktop in his hands. Duplechine stated that as he walked back to his desk carrying Fontenot's desktop, the afternoon prayer came on over the P.A. system and that at the conclusion of the prayer, Fontenot smirked at him, so he "flipped" the desktop, frisbee-style, at Fontenot. Fontenot saw Duplechine start a motion towards him with the desktop and immediately turned his face away, not knowing if Duplechine was still holding the desktop when it hit him, or if Duplechine actually threw it. As the boys were only one desk row apart, either scenario is possible.

The desktop struck Fontenot on the left side of his head just behind the ear. Duplechine admits that he was very angry and intended to hit Fontenot with the desktop. He also stated that he did not care where it hit Fontenot. Duplechine further admitted that he knew hitting someone with a desktop could produce serious injury. According to Fontenot, after striking him with the desktop, Duplechine warned Fontenot that if he told anyone about the incident, Duplechine would kill him. In evaluating this case, one must also take into account that Duplechine was an athlete who not only played football, but was also a discus thrower on the school track team.

At the time of the incident, both Fontenot and Duplechine were minors, with Duplechine living in the home of his parents, Jack and Jackie Duplechine. The Duplechines were covered by a home owner's liability policy issued by Allstate Insurance Company. Upon reaching majority, Fontenot filed suit against Duplechine and Allstate seeking damages in connection with the injury he sustained.

2

## TRIAL COURT PROCEEDINGS

At the district court's bench trial, Allstate's primary contention was that Duplechine intentionally injured Fontenot, that the insurance policy's intentional act exclusion should apply and, therefore, coverage should be denied. The trial court found that the exclusionary clause in the Allstate insurance policy did not apply. Judgment was rendered in favor of Fontenot, awarding him $20,000.00 in general damages and $10,877.46 in medical expenses.

Allstate appeals the coverage issue and contends further that the damage award was excessive. Kim Duplechine also appeals, asserting that the award of damages is excessive.

## THE ISSUES

The liability of Duplechine for the injuries sustained by Fontenot is not in dispute. The issue of whether Duplechine intended to inflict some injury upon Fontenot is also not in dispute. Consequently, the only issues in this appeal are whether the intentional act of Duplechine was sufficient to trigger into effect the exclusion clause in the Allstate insurance policy, and whether or not the trial court's award of damages was excessive.

## LAW AND DISCUSSION

**INSURANCE COVERAGE**

The coverage issue turns on the wording of the intentional act exclusion contained in the Allstate policy. The clause in question reads, in pertinent part, as follows:

> Losses We Do Not Cover Under Coverage X:
>
> 1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the

3

intentional or criminal acts or omissions of, any insured person.  This exclusion applies even if:
        . . .

        b.) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected;

The trial court  found the intentional act clause to be inapplicable, reasoning that the clause is ambiguous, especially in light of the decisions in *Breland v. Schilling*, 550 So.2d 609 (La.1989) and *Yount v. Maisano*, 627 So.2d 148 (La.1993). In both *Breland* and *Yount* the wording in each policy exclusion under consideration contains the significant limitation that the exclusion applies only if the resulting injury was "expected or intended"  by the insured/tortfeasor.  In those cases, the supreme court reasoned that for the exclusion to apply, the insured person causing the injury must intend or expect the consequences which actually resulted. For instance, if one were to slap another with the intent, say, of getting that person's attention, and the resulting consequence is a broken jaw, the exclusion does not apply.  Only if the perpetrator intended to break the jaw would the exclusion be applicable.

In the case at hand, the exclusionary language in the Allstate policy differs significantly from the language considered in *Breland* and *Yount.*  Here, the policy plainly states that the exclusion applies "even if...such bodily injury...is of a different kind or degree than intended or reasonably expected."  Pursuant to this language, once one intentionally inflicts an injury upon another, there is no coverage even though the extent of the injury is greater than that intended by the perpetrator.

We do not find the exclusionary clause in the Allstate policy to be ambiguous. Also, in finding the clause at issue here to be unambiguous and clearly distinguishable from the respective clauses under consideration in *Breland* and *Yount,* we are in full accord with our colleagues of the Fourth Circuit.  In, *King v. Galloway*,

4

01-1358 (La.App. 4 Cir. 9/11/02), 828 So.2d 49, *writs denied*, 02-2598 (La. 11/27/02), 831 So.2d 281 and 02-2510 (La. 11/27/02), 831 So.2d 283, the court addressed an Allstate insurance company policy containing an intentional act exclusion clause *identical* to the clause under consideration here.  In *King*, the Appellants argued that the supreme court case of *Breland* was controlling.[2]  The *King* court focused on the readily apparent difference in the Allstate exclusion clause from the clause under consideration in *Breland* and in those other cases involving exclusionary language similar to *Breland*.  *King* holds that because of this difference in wording, those other cases such as *Breland* are not applicable or controlling.  In holding that the Allstate exclusion applies, even though the resulting injuries are more severe than those intended by the tortfeasor/insured, *King* relies on basic principals of contract interpretation:

> It is well-settled in our law that general rules of interpretation apply to insurance policies in the same way that they apply in other contracts.  *Schroeder v. Board of Supv. of La. State Univ.*, 591 So.2d 342, 345 (La.1991).  According to  *Smith v. Travelers Property Casualty*, 35,695, p. 5 (La.App. 2 Cir. 2/27/02), 811 So.2d 1097, 1100-1101:
>
>> An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles.  *Ledbetter v. Concord General Corp*. 95-0809 (La.1/6/96), 665 So.2d 1166, *citing,  Smith v. Matthews*, 611 So.2d 1377 (La.1993).  The parties' intent determines the extent of the coverage;  and, if the wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.  *Ledbetter, supra, citing, Pareti v. Sentry Indemnity Company*, 536 So.2d 417 (La.1988).
>>
>> Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is

---

[2]The Appellants in *King* did not cite *Yount*, but rather cited another supreme court case, *Pique v Saia*, 450 So.2d 654 (La.1984) which addressed exclusionary language similar to that in *Breland*.

> construed in favor of the insured. *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975 (La.1991). However, the rule of strict construction does not 'authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.' *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 72 (1939). *Ledbetter, supra.*

*Id.* at 51.

King also distinguished the policy language under consideration in that case from the "*Breland*-type" clause which had been previously addressed by the supreme court:

> Allstate argues that the intentional act exclusion in the policy in the instant case is distinguishable from the policies referenced in *Pique and Breland*. In both of those cases, the policy language under interpretation by the Supreme Court excluded coverage for "bodily injury ... which is either expected or intended *from the standpoint of the insured*." (Emphasis added ). Therefore, Allstate argues that its policy focuses not on the insured's standpoint, but on a reasonable expectation of what may result from the actions of the insured.
>
> . . . .
>
> In both cases [relied upon by plaintiffs], the Supreme Court looked to the policy language first, and this is the approach we shall use in the instant case. Reviewing the plain language of the policy, it is clear that Allstate did not agree to cover any bodily injury which resulted from the intended or reasonably expected criminal acts of the tortfeasor/insured, regardless of the degree of injury intended or expected.

*Id.* at 52-53.

In the case of *Perkins v. Shaheen*, 03-1254 (La.App. 3 Cir. 3/3/04), 867 So.2d 135, this court considered exclusionary wording similar, but not identical, to the language under consideration here. In that case the policy excluded any intentional acts of an insured, including the "expected and unexpected results of these acts". The thrust of the exclusion in *Shaheen* and that being considered here is the same. After distinguishing those cases involving the *Breland*-type clause, the court in *Shaheen*

held that there was no coverage, *i.e.*, it makes no difference if the actual injuries are more severe than those intended by the tortfeasor/insured.

Duplechine openly admitted that his actions were intentional. He admitted that he was very angry with Fontenot and meant to strike him with the desktop. He was angry with Fontenot before the incident, during the incident, and remained so after the incident. As a football player and discus thrower, Duplechine knew the danger in slinging the desktop at Fontenot at short range. Given that Fontenot's injuries were not that severe, coverage could very well be denied even if a *Breland*-type exclusion clause were applicable. That, however, is not our task. The Allstate policy is clear and unambiguous that even if Fontenot's injuries were "of a different kind or degree than intended or reasonably expected" by Duplechine, the exclusionary clause would be applicable and would result in a denial of coverage.

**DAMAGES**

Next, we turn our attention to the damages awarded Plaintiff. In a tort action, plaintiff bears the burden of proving by a preponderance of the evidence both the injury and a causal connection between the injury and the tort. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La. 1993). It is well settled that a plaintiff must prove every element of damage by a preponderance of the evidence and that damages based on mere speculation or conjecture are not allowed. *Burse v. Allstate Ins. Co.*, 00-1895 (La.App. 5 Cir. 3/28/01), 783 So.2d 548. Additionally, in *Este' v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96); 676 So.2d 850, 857, this court stated as follows:

> A plaintiff may recover past medical expenses which [he] incurs as a result of an injury. However, the plaintiff must prove that, more probable than not, the medical treatment was necessitated by trauma suffered in the accident. *White v. Longanecker*, 93-1122 (La.App. 1 Cir.

7

5/23/94); 637 So.2d 1213, *writ denied*, 94-1704 (La. 10/7/94); 644 So.2d 640.

Although Fontenot was seen and treated by several doctors, none of them testified at the trial or by deposition. The only evidence relating to damages was the testimony of Fontenot himself, and the admission into evidence of certain medical bills and records. Fontenot initially claimed the blow to his head caused ear pain, a mild hearing loss, headaches, dizziness and lightheadedness. Long after the incident, he began experiencing seizures and fainting spells. Also much later, he was found to have four impacted wisdom teeth which eventually were removed.

The most serious of Fontenot's complaints seems to be the seizures he began experiencing well over a year after the desktop incident. The record shows that Fontenot was involved in a vehicle accident in July 2002, resulting in the truck in which he was a passenger, flipping over on its side. Significantly, Fontenot admits that he had experienced no seizures prior to this vehicular accident. Again, there is no medical testimony linking the seizures with the incident at issue here. The record provides little more than inferences relating to the cause of the seizures, the much stronger inference being that they were caused by the vehicle accident which occurred some sixteen months after the fracas with Duplechine.

We are mindful that there is no rule making medical testimony a requisite in establishing medical causation. However, we must note that Fontenot has been treated by physicians who, presumably, were readily available to testify or give a deposition. Fontenot did not call upon these doctors to do either. Under these circumstances, at the very least, the court must examine with a very critical eye that medical-related evidence which is offered.

While Fontenot alleges that all of his symptoms after March 2001 are related to the incident at issue, his testimony and medical records do not substantiate this allegation. The Plaintiff's medical treatment started with a visit to the emergency room of Opelousas General Hospital the day of the incident. He was then seen by a number of physicians and had a number of tests run at both Opelousas General and at St. Mary's Imaging Center in Lafayette. The results of all of these tests were within normal limits. The only immediate results of the blow appear to have been swelling behind the left ear, inflamation of ear, pain and dizziness.

Considering the Plaintiff's testimony that he experienced no seizures until after the July 2002 vehicular accident, and the lack of medical evidence relating the seizures back to the desktop incident, we conclude that Plaintiff failed in his burden of proving that his seizures and fainting spells were caused by the incident of March 2001. We find that the record fails to support a finding that Fontenot's seizures, fainting spells and impacted wisdom teeth were caused by the actions of Duplechine. It follows that the medical expenses awarded by the trial court relating to these complaints must be disallowed. The seizure related charges were from St. Francis Medical Center ($1,923.50), North Monroe Medical Center ($851.41), treatment by Dr. Gamal Boutros ($221.00) and a prescription expense for medication for the seizures ($23.49), all of which total $3,019.40. We also disallow the expense incurred for having his impacted wisdom teeth removed ($565.00), as there is no evidence that this condition resulted from the March 2001 altercation. Accordingly, a total of $3,584.40 should be deducted from the trial court's award of special damages, leaving the sum of $7,293.06. This award is subject to a credit of $4,149.18,

which was previously paid, leaving a net award due Plaintiff for medical expenses of $3,143.88.

Considering the foregoing, we conclude that the general damage award is excessive as it seeks to compensate Plaintiff for pain and suffering from certain physical complaints clearly not connected to the March 2001 incident. As there is no hard and fast rule in regard to the award of general damages we find it is appropriate to reduce the general damages awarded roughly in proportion to the reduction in medical expenses. We find an award of $13,400.00 in general damages would be appropriate.

Accordingly, for the reasons stated, we reversed the finding of the trial court finding coverage under the Allstate policy and dismiss Allstate Insurance Company with prejudice; we amend the judgment of the trial court to award Plaintiff a total of $16,543.88. Costs of this appeal are taxed 67% to Defendant, Kipp Duplechine and 33% to Plaintiff, Michael Fontenot.

**REVERSED IN PART; AMENDED IN PART; AND RENDERED.**

NUMBER 04-424

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

MICHAEL R. FONTENOT

VERSUS

KIPP L. DUPLECHINE, ET AL.

AMY, J., concurring in part, dissenting in part.

I agree with the majority that the trial court's determination that the intentional tort exclusion is ambiguous must be reversed. However, my analysis regarding the exclusion differs. In my opinion, the injuries resulting from the intentional tort were of the type which "may reasonably be expected to result" from the intentional actions of the plaintiff. Accordingly, I find that the situation fits into the first portion of the policy language. The language in this section appears to be consistent with Louisiana Supreme Court jurisprudence regarding ambiguity in intentional tort exclusions. *See Yount v. Maisano*, 627 So.2d 148 (La.1993). Given this finding, I do not find it necessary to consider the subsequent portion of the policy alleged to be ambiguous, Subsection B. Therefore, unlike the majority, I do not reach the question of whether the phrase contained in that subsection, i.e., whether the phrase "damage is of a different kind or degree than intended or reasonably expected," renders the exception ambiguous.

With regard to damages, I agree with the majority that the medical damages must be reversed to some degree due to lack of evidence of causation. It is the extent of that reversal with which I disagree. In my opinion, the record establishes that recovery is available, at the most, for the expenses incurred at the emergency room immediately after the accident and those of Dr. Finley, who treated the plaintiff for continuing complaints of ear pain. Therefore, I would reduce the medical damages

further than does the majority.

With regard to general damages, I again differ from the majority. In my opinion, a reduction of the general damages is inappropriate in this instance. Rather, because I find error in the medical damages awarded at the trial court level, it seems to me that general damages are not to be reduced but must be awarded anew and upon de novo review of the record. Given the limited medical damages proven, I would award less general damages than does the majority.

For these reasons, I respectfully concur in part, dissent in part.

NUMBER 04-424

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

MICHAEL R. FONTENOT

VERSUS

KIPP L. DUPLECHINE, ET AL.

PICKETT, J., concurring in the result.

I agree with the majority in all respects but one. I believe we must conduct a *de novo* review of the record to determine the amount of general damages that are appropriate. I find, however, after conducting a *de novo* review, that $13,400.00 is an appropriate award in this case.

For these reasons, I concur in the result.