STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-409 consolidated with 10-410, 10-411

ANDREW RICHARD, ET AL.

VERSUS

ROBERT BRASSEAUX, JR., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 83771 C/W 84548 C/W 84592
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Michael W. Campbell
Caffery, Oubre, Campbell & Garrison, L.L.P.
301 E. Kaliste Saloom Rd. Ste. 301
Lafayette, LA 70508
(337) 232-6581
Counsel for Defendant/Appellee:
Robert Brasseaux, Jr.

Peter Forrestt Caviness
Dauzat, Falgoust, Caviness & Bienvenu
P. O. Box 1450
Opelousas, LA 70571-1450
(337) 942-5811
Counsel for Defendant/Appellee:
Louisiana Farm Bureau Casualty Ins. Co.

**Edward O. Taulbee IV**
**Taulbee & Associates**
**P.O. Box 2038**
**Lafayette, LA 70502-2038**
**(337) 269-5005**
**Counsel for Defendants/Appellees:**
**Louisiana Farm Bureau Mutual Insurance Co.**
**Louisiana Farm Bureau Casualty Ins. Co.**

**Jeffery F. Speer**
**Doucet & Speer**
**P. O. Box 4303**
**Lafayette, LA 70502-4303**
**(337) 232-0405**
**Counsel for Plaintiffs/Appellants:**
**Susan Richard**
**Jenna Richard**
**Andrew Richard**

**Christopher Shannon Hardy**
**Penny & Hardy**
**P. O. Box 2187**
**Lafayette, LA 70502-2187**
**(337) 231-1955**
**Counsel for Defendants/Appellees:**
**Allstate Insurance Company**
**Andrew Richard**

**Scott A. Stefanski**
**Edwards, Stefanski & Zaunbrecher**
**P. O. Box 730**
**Crowley, LA 70527-0730**
**(337) 783-7000**
**Counsel for Plaintiffs/Appellants:**
**Ashley Nero**

**Max Michael Menard**
**Taulbee & Associates**
**P. O. Box 2038**
**Lafayette, LA 70502-2308**
**(337) 269-5005**
**Counsel for Defendants/Appellees:**
**Louisiana Farm Bureau Mutual Ins. Co.**
**Louisiana Farm Bureau Casualty Ins. Co.**

**J. Bradley Duhe**
**Ottinger Hebert, L.L.C.**
**P. O. Box 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**

**Counsel for Plaintiffs/Appellees:**
**Michelle Matlock**
**Steven R. Matlock**

**Julian Louis Gibbens, III**
**Doucet & Speer**
**P. O. Box 4303**
**Lafayette, LA 70502-4303**
**(337) 232-0405**
**Counsel for Plaintiffs/Appellants:**
**Susan Richard**
**Jenna Richard**
**Andrew Richard**

**Tracey A. Biagas-Hill**
**Attorney at Law**
**400 E. Kaliste Saloom, #8300**
**Lafayette, LA 70508**
**(337) 291-1743**
**Counsel for Defendants/Appellees:**
**Allstate Insurance Company**
**Encompass Insurance**

**Sean P. Rabalais**
**Attorney at Law**
**400 E. Kaliste Saloom, Ste 8300**
**Lafayette, LA 70508**
**(337) 291-1743**
**Counsel for Defendants/Appellees:**
**Encompass Insurance**
**Allstate Insurance Company**

**GREMILLION, Judge**.

In these consolidated appeals, Ashley Nero and Andrew Richard, Susan Richard, and Jenna Richard (the Richards) (collectively the plaintiffs) appeal the grant of summary judgment in favor of Louisiana Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company (collectively Farm Bureau). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the last day of school in May 2005, Jenna Richard was operating a 1999 Pontiac Grand Am.[1] Candice Brasseaux was the front-seat passenger. Ashley Nero and three others, Tiffany Marceaux, Ryan Matlock, and Ryan Leger were seated in the rear. So inspired was she by the song "Swerve" that began to play on the radio, Brasseaux jerked the steering wheel causing Richard to lose control of the vehicle. The vehicle subsequently flipped and landed in a ditch. As a result of this accident, multiple lawsuits were filed.

This appeal involves two insurance policies issued to Candice Brasseaux's mother, Masel Brasseaux. Louisiana Farm Bureau Casualty Insurance Company issued a standard automobile liability policy, Policy No. A366310, insuring a 2000 F150 Ford pickup truck (the automobile policy). Louisiana Farm Bureau Mutual Insurance Company issued a standard homeowner's policy, Policy No. DP 102732, to Masel, insuring a premise located in Rayne, Louisiana (the homeowner's policy).

Farm Bureau first filed a motion for summary judgment on the automobile policy arguing that there was no coverage under the policy since

_____

[1]The vehicle was owned by her father, Andrew Richard.

1

Brasseaux did not have expressed or implied permission to grab the steering wheel. Farm Bureau then filed a motion for summary judgment on the homeowner's policy arguing that there was no coverage under the "Intentional Act" exclusion or the "Ownership Maintenance and Use" exclusion. Following a February 2009 hearing on the motions for summary judgment, the trial court granted summary judgment in Farm Bureau's favor finding there was no genuine issue of material fact that Brasseaux did not have express or implied permission to swerve the steering wheel. It further found that there was no genuine issue of material fact that Brasseaux's acts were intentional, excluding any coverage under the homeowner's policy. The plaintiffs now appeal.

Nero assigns as error:

1.  The trial court's finding that a guest passenger who grabbed the steering wheel in reaction to a song constituted driving within the exclusion against an unauthorized person using the vehicle and that this act was an intentional act.

2.  A genuine issue of material fact was presented whether Brasseaux had implied permission to become a permissive operator of said vehicle.

3.  Material fact existed as to whether Brasseaux's actions constituted an intentional action within Farm Bureau's policy exclusions.

The Richards, represented by separate counsel, fail to assign any errors, but present the issue for review as: Whether Farm Bureau is entitled to judgment as a matter of law according to La.Code Civ.P. art. 966, namely, that there is no genuine issue of material fact regarding whether Farm Bureau provided coverage.

**SUMMARY JUDGMENT**

On appeal, summary judgments are reviewed do novo. *Magnon v.*

2

*Collins,* 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied,* 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

The rules concerning the interpretation of insurance contracts were set forth by this court in *State Farm Mutual Automobile Insurance Co. v. Cooper*, 97-1134, p.3 (La.App. 3 Cir. 2/18/98), 707 So.2d 986, 988, *writ denied*, 98-0713 (La. 5/1/98), 718 So.2d 412, citing *Crabtree v. State Farm Insurance Co.,* 93-0509 (La. 2/28/94), 632 So.2d 736, 741 (footnotes omitted):

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Louisiana Ins. Guar. Ass'n v. Intersate Fire & Casualty Co.*, 93-0911, P.5 (La. 1/14/94), 630 So.2d 759, 763; *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993); *Schroeder v. Board of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the

3

parties' intent and the agreement must be enforced as written. *Smith*, 611So.2d at 1379; *Central La. Elec. Co. V. Westinghouse Elec. Corp.*, 579 So.2d 981, 985(La.1991); *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420(La.1988); *see* La.Civ.Code art. 2046. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Interstate*, 93-0911, p. 5. 630 So.2d at 763; *Fertittta v. Palmer*, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. *Westinghouse,* 579 So.2d at 958; *Pareti*, 536 So.2d at 420; *see* La.Civ.Code art. 2050. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. *Interstate*, 93-0911, p.6, 630 So.2d at 764; *Smith*, 611 So.2d at 1379; *Pareti*, 536 So.2d at 420; *see* La.Civ.Code art. 2056.

The insured bears the burden of proving the incident falls within the policy coverage. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So.2d 119. "On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Id.* at 124.

## EXPRESS OR IMPLIED CONSENT (AUTO POLICY)

Farm Bureau's policy has a specific section pertaining to "Use of Other Automobiles" in which it does provide coverage in some circumstances: "If the named insured is an individual or husband or wife . . . such insurance as is afforded by this policy . . . applies with respect to the use of any other automobile with *permission of the owner . . .*"

Permission can be express or implied. *Manzella v. Doe*, 94-2854 (La. 12/8/95), 664 So.2d 398. There is no dispute that Brasseaux did not have express permission to grab the steering wheel. Thus, the question before us is whether there is a genuine issue of material fact that Brasseaux had implied permission to swerve the steering wheel. Implied permission arises when the named insured acquiesces in

4

or does not object to the use of the vehicle. *Id.*

Nero argues that Brasseaux had implied permission to operate the vehicle at the time of the accident, conceding that she did not have express permission. Nero argues that the issue of "implied permission" is "heavily debated" and that a genuine issue of material fact exists in this regard. Nero points to Brasseaux's statement to Deputy Sheriff Monceaux that "we were playing a game when the song came on the radio we pull the steering wheel, I pulled and she pulled back." Thus, according to Nero the issue of whether Richard acquiesced in playing the "game" when the song came on is a genuine issue of fact. Nero argues that because Brasseaux was allowed to operate the radio and because Richard never told her not to grab the wheel before Brasseaux did so, consent was implied. We disagree.

Although it is difficult to discern, it appears that the Richards argue that summary judgment was inappropriate because:

> The plaintiff in this case has never agreed to any stipulations regarding facts involving the operation/driving of the vehicle and/or the act of grabbing and jerking the steering wheel, nor any conclusions of these facts as a driver or a passenger. The plaintiff has always asserted that the actions of Candice Brasseaux that day and the outcome which resulted, constitutes negligence on her part and nothing more.

> Based solely on this distinction, genuine issues of material fact exists, regarding coverage under the auto policy and therefore the granting of summary judgment in this case was in error.

While the Richards may have never agreed to any stipulations, they also never put forth any evidence to suggest that they would be able to prove at trial that Brasseaux had express or implied permission to operate the vehicle or that Brasseaux was covered under the Farm Bureau automobile policy via some other clause.

The plaintiffs have failed to put forth any evidence that would suggest that Brasseaux had implied consent to swerve the steering wheel. On the contrary,

5

witness testimony and, more importantly, Brasseaux's own testimony makes it clear that she did not have implied consent.

Richard testified that the song "Swerve" began playing from her CD player and that Brasseaux unexpectedly swerved the steering wheel first to the left. She stated that there had been no past history between the two regarding the song and that Brasseaux had never indicated that she would swerve a car steering wheel upon hearing the song.  Richard  stated that when Brasseaux pushed the steering wheel to the left, she, in turn, pushed it to the right to overcome the fact that they were veering into the oncoming lane of traffic. Richard stated that Brasseaux then grabbed the wheel again and pulled it to the right despite the fact that she had told Brasseaux, "No, Candice, stop."  Richard testified that she never indicated to Brasseaux that it would be appropriate for her to swerve the steering wheel to the left or right when the song "Swerve" came on.  She testified that none of her friends had discussed swerving a steering wheel upon hearing the song "Swerve."

Leger, a middle rear-seat passenger, testified that Brasseaux first pulled the steering wheel to the left, that Richard told her to stop, and that Brasseaux then pulled it to the right, after which the accident occurred.  He also stated he had never heard anyone discussing swerving a steering wheel in response to this song.  He stated that nothing occurred in the car that would have given Brasseaux the impression that it would be okay for her to grab the steering wheel and swerve it.

Brasseaux's testimony elicited the following:

Q.    What happened as that song came on?

A.    From what I can remember I pulled the wheel to the left
      and she pulled it back to the right.

Q.    Why did you pull the wheel to the left?

A.     I'm not sure.

Q.     Did it have something to do with the song being on?

A.     I guess.

Q.     What do you remember doing as the song came on?

A.     All I remember is that I pulled the wheel to the left and then she corrected it to the right.

. . .

Q.     When you reached over intending to grab the steering wheel and move it to the left did you know that would cause the car to move to the left?

A.     Yes, sir.

. . .

Q.     In the days and weeks and months before this accident had you ever talked with Jenna Richard about this song and about maybe we'll one day, one of us, grab the wheel and cause the car to swerve left or right when this song comes on?

A.      No , sir.

Q.     Had you ever heard it talked about amongst your friends that that might be a neat idea to do when this song comes on?

A.     No, sir.

Q.     So as far as you can remember, although you knew about this song and you knew what the words said, you had never heard anybody talk about let's do this, let's make the car move.

A.      No, sir.

Q.     And you never discussed it in any way with Jenna Richard?

A.     No, sir.

. . .

7

Q.   Did she [Jenna Richard] in any way when this song came on, create an impression in your mind that it would be okay for you to reach over and grab the wheel?

A.   I don't remember.

. . .

Q.   Is it a fair statement to say that she [Jenna Richard] never did anything to make you think it was okay to reach over and grab the steering wheel and jerk it to the left?

A.   Yes, sir.

Q.   Is it a fair statement to say that you intended to grab the wheel and jerk the wheel to the left?

A.   Yes.

Q.   Is it also fair to say that you knew that as a result of jerking the wheel to the left the car would move left?

A.   Yes, sir.

Later in her deposition testimony regarding her written statement that "we were playing a game," Brasseaux testified:

Q.   Would a game be something that one person plays?

A.   Maybe.

Q.   If this was a game you were the only player, right?

A.   Yes, sir.

Q.   Because nobody else knew about it, that you were going to do any of this, right?

A.   Yes, sir.

Questioned by a different counsel, she responded:

Q.   Ma'am, I want to talk to you about this statement for just a moment. The phrase on this statement that I want to talk to you about is the phrase that says "we were playing a game when a song came on." Did Jenna Richard ever tell you verbally in the moments before this accident happened

and this song came on that she wanted to play a game with you dealing with this Swerve song?

A. No, sir.

Q. Did she ever do anything to make you believe that she knew you were intending to play a game with the Swerve song as it came on before the accident occurred?

A. No, sir.

She further stated that they were not playing a game when the song came on and that she did not know why she said that they were.

Nero testified no one had discussed nor had anyone in the vehicle ever done anything that would indicate that someone might grab the steering wheel when the song "Swerve" was playing. She further testified that Richard did not do anything that would give Brasseaux the impression that it would be okay to grab the steering wheel.

Marceaux testified that she heard Richard tell Brasseaux to "stop it." She further testified that nothing occurred in the car that would have given Brasseaux the impression that it was okay to swerve the steering wheel.

Although the plaintiffs argue that whether Brasseaux had implied consent to swerve the steering wheel is a genuine issue of fact, they have failed to put forth any evidence to suggest that they will be able to meet this burden of proof at trial. On the contrary, the evidence, particularly Brasseaux's own testimony, overwhelmingly shows that she did not have implied consent to jerk the steering wheel. It is clear that nothing occurred in the vehicle prior to the accident that would have signaled to Brasseaux that Richard acquiesced in Brasseaux jerking the steering wheel. Moreover, several testified that once Brasseaux jerked it to the left the first time, Richard specifically instructed her to stop, yet she continued jerking the steering

9

wheel to the right.  Accordingly, this assignment of error is without merit.

**INTENTIONAL ACT/OWNERSHIP, MAINTENANCE, USE EXCLUSION**

**(HOMEOWNER POLICY)**

*Intentional Act*

Farm Bureau maintains that the homeowner policy provides two exclusions precluding coverage. The first is the intentional act exclusion which states:

1. **Coverage E- Personal Liability and Coverage F- Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

   a. resulting from intentional acts or directions by you or any **insured**.  The expected or unexpected results of these acts or directions are not covered.

Nero contends that while Brasseaux intended to grab the steering wheel, she did not intend to cause a collision or expect that one would occur.  The Richards argue the intentional act exclusion should not apply because Brasseaux only intended for the car to swerve left and not for the resulting accident to occur.

Again, Brasseaux's own testimony is the best evidence that she intended for the car to move to the left when she jerked the steering wheel.  There is no genuine issue of fact that Brasseaux intentionally jerked the steering wheel to the left and then to the right.  Whether she expected an accident to result is of no moment. The exclusionary clause omitting the expected or unexpected results of an intentional act from coverage is a valid exclusion. *See Fontenot v. Duplechine*, 04-424 (La.App. 3 Cir. 12/8/04), 891 So.2d 41; *Perkins v. Shaheen,* 03-1254 (La.App. 3 Cir. 3/3/04), 867 So.2d 135; and *Canterberry v. Chamblee*, 41,940 (La.App. 2 Cir. 2/28/2007), 953 So.2d 900.  Nero argues that genuine issues of fact exist as to whether  Brasseaux's jerking of the steering wheel actually resulted in the accident that followed.  Yet,

Nero has put forth no evidence to suggest that she will be able to prove this allegation at trial. Accordingly, there is no genuine issue of material fact and this assignment of error is without merit.

*Ownership, Maintenance, or Use Exclusion of a Motor Vehicle*

The second exclusion relied upon by Farm Bureau states:

1. **Coverage E- Personal Liability and Coverage F- Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

   e. arising out of:

   > (1) the ownership, maintenance, use, loading or unloading of **motor vehicles** or any other motorized land conveyances, including trailers or **recreational motor vehicles**, owned or operated by or rented or loaned to an **insured**.

Farm Bureau argues that if the use of the vehicle is an essential element of the plaintiffs' recovery, then this exclusion in the homeowners's policy applies. This issue is rendered moot by our findings above that the homeowner's policy excludes coverage under the intentional act provision.

**CONCLUSION**

The judgment of the trial court granting summary judgment in favor of the defendants-appellants, Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company, is affirmed. All costs of this appeal are to be assessed equally among the plaintiffs.

**AFFIRMED**.

11