# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 14-2933

———————————————

Grinnell Mutual Reinsurance Company

*Plaintiff - Appellant*

v.

Annamarie Martinez Villanueva, as Trustee for the next of kin of Alyssa Marie Zamarron

*Defendant*

Kelly Stuart Schmidt; Jerome Allan Schmidt

*Defendants - Appellees*

———————————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

———————————————

Submitted: June 9, 2015
Filed: August 11, 2015

———————————————

Before LOKEN, BYE, and KELLY, Circuit Judges.

———————————————

BYE, Circuit Judge.

Grinnell Mutual Reinsurance Company (Grinnell) appeals the district court's[1] grant of summary judgment in favor of Jerome and Kelly Schmidt in this insurance coverage dispute. The district court determined a farm policy issued to the Schmidts provided coverage for an accident involving an all-terrain vehicle (ATV) which occurred on the Schmidts' farm. We affirm.

I

Jerome and Kelly Schmidt, father and son, operate a farm together in Worthington, Minnesota. Kelly has a daughter named Madison. In May 2012, Madison hosted a sleepover party at her father's and grandfather's farm to celebrate her twelfth birthday. One of Madison's guests was her ten-year old friend, Alyssa Zamarron. The day after the sleepover, Madison and Alyssa took turns driving the Schmidts' ATV around the property. This occurred over several hours, during which time both Kelly and Jerome were working outside. Kelly and Jerome saw both girls operating the ATV and did not stop the girls from doing so. At one point, Jerome told his granddaughter that both girls needed to slow down while driving the ATV.

That evening, while Alyssa was driving the ATV with Madison as a passenger, the ATV struck a tree. Alyssa died as a result of the accident. A trustee acting on behalf of her next of kin filed a wrongful death action against the Schmidts alleging the death was caused by the Schmidts' negligent supervision. The Schmidts tendered defense of the action to Grinnell under their farm policy, which provided $300,000 in coverage. Although Grinnell initially informed the Schmidts the policy "appears to provide [them] with coverage for this loss," Grinnell ultimately reserved its right to dispute coverage, filed this declaratory judgment action, and contended the policy

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

did not provide coverage for Alyssa's death. The wrongful death action ultimately settled for $462,500.

In this declaratory judgment action, the parties brought cross motions for summary judgment. Both parties agree the coverage dispute turns on whether Jerome or Kelly – the named insureds – gave Alyssa "express permission" to operate the ATV within the meaning of an exclusion contained in the Select Recreational Vehicle Limited Liability Coverage endorsement of the policy. In relevant part, the exclusion states the policy does not cover "bodily injury" to any "insured." The exclusion goes on to define an "insured" as "any person operating [an ATV] with 'your' express permission."

Because the policy did not define the term "express permission," the district court gave the phrase its plain and ordinary meaning. In doing so, the district court distinguished between situations where permission is expressly stated, and situations where permission is implied by conduct or otherwise. The district court looked to Minnesota cases applying the phrase "express or implied permission" in automobile policies, which distinguish between the two types of permission "based on the presence or absence of a verbal statement." Grinnell Mut. Reinsurance Co. v. Villaneuva, 37 F. Supp. 3d 1043, 1050-51 (D. Minn. 2014) (citing Jones v. Fleischhacker, 325 N.W.2d 633, 635 (Minn. 1982)). The district court ultimately concluded the facts involved in this case "would certainly be more than enough to demonstrate that Alyssa was operating the ATV with the tacit or implied permission of the Schmidts [but] . . . insufficient to show that Alyssa was operating the ATV with the Schmidts' express permission." Id. at 1052. The district court therefore determined the policy provided coverage for the accident which resulted in Alyssa's death and granted summary judgment in favor of the Schmidts.

Grinnell filed a timely appeal.

II

We review the district court's grant of summary judgment de novo. <u>Occidental Fire & Cas. Co. v. Soczynski</u>, 765 F.3d 931, 935 (8th Cir. 2014).

Grinnell contends the district court erred when it determined Alyssa did not have express permission from either Jerome or Kelly to operate the ATV. We disagree.

Under Minnesota law, the initial burden of establishing coverage rests with the insured. <u>Midwest Family Mut. Ins. Co. v. Wolters</u>, 831 N.W.2d 628, 636 (Minn. 2013). Grinnell does not dispute that the Schmidts met their burden of establishing a prima facie case of coverage. Instead, the dispute in this case turns on the applicability of an exclusion in the policy. When an insured establishes coverage, the burden shifts to the insurer to prove the applicability of an exclusion. <u>See</u> <u>id.</u> In addition, exclusions in an insurance policy are construed narrowly and strictly against the insurer. <u>Travelers Indem. Co. v. Bloomington Steel & Supply Co.</u>, 718 N.W.2d 888, 894 (Minn. 2006). Finally, "if undefined terms are reasonably susceptible to more than one interpretation, the terms must be interpreted liberally in favor of finding coverage." <u>Gen. Ca. Co. of Wis. v. Wozniak Travel, Inc.</u>, 762 N.W.2d 572, 575 (Minn. 2009).

In this case, the farm policy Grinnell issued to the Schmidts did not define the phrase "express permission." When a term is undefined, it is given its plain and ordinary meaning. <u>Travelers</u>, 718 N.W.2d at 894. It is generally well-accepted that the plain and ordinary meaning of the term "express" means directly stated or written, and is meant to distinguish situations where a message is implied or left to inference. <u>See, e.g.</u>, <u>State Farm Fire & Cas. Co. v. Ricks</u>, 902 S.W.2d 323, 324 (Mo. Ct. App. 1995) ("To be express, permission must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference."

(internal citations and quotations omitted)); Richard v. Brasseaux, 50 So. 3d 282, 286 (La. Ct. App. 2010) ("Implied permission arises when the named insured acquiesces in or does not object to the use of the vehicle").

The facts of this case present a classic example of the difference between express and implied permission. Both Jerome and Kelly tacitly approved of or acquiesced to Alyssa's use of the ATV, because both saw her using the ATV and neither objected. But Alyssa never directly asked either Jerome or Kelly if she could operate the ATV, and neither of the named insureds expressly told Alyssa she could do so. Thus, Alyssa did not operate the ATV with the *express* permission of a named insured, which is what the policy's exclusion required. As the district court aptly noted:

> Grinnell drafted the policy language at issue here, and in so doing could have specified in the endorsement that "express or implied permission" would suffice. Grinnell also could have simply required that any kind of "permission," without qualification, have been given – as it did in [another provision of the policy].
>
> But Grinnell did not take either of those avenues. "Express" modifies "permission" in the endorsement, and it must therefore be given its plain and ordinary meaning.

Grinnell, 37 F. Supp. 3d at 1050.

We agree. Grinnell's arguments suggesting the district court erred "are the complaints of a poor draftsman, and we are as unsympathetic as we expect the [Minnesota courts] would be." George K. Baum & Co. v. Twin City Fire Ins. Co., 760 F.3d 795, 803 (8th Cir. 2014).

> [I]t is not our role to rescue an insurer from its own drafting decisions. While this rule produces harsh results in some cases, it also, by

encouraging insurers to eliminate ambiguities, leads to clear and comprehensible insurance contracts. Only the insurer, after all, has the power to alter the language in the insurance contracts it sells.

Id. (internal citation and quotation marks omitted).

III

We affirm the judgment of the district court.

_____