868 So.2d 721 (2003)
Todd A. INZINNA
v.
Cory T. WALCOTT and Allstate Insurance Company.
No. 2002 CA 0582.
Court of Appeal of Louisiana, First Circuit.
November 21, 2003.
*722 Ron S. Macaluso, Hammond, for Plaintiff/Appellee Todd A. Inzinna.
Craig J. Fontenot, Baton Rouge, for Defendant/Appellant Allstate Insurance Company.
E. Kelleher Simon, Covington, for Defendant/Appellee Cory T. Walcott.
Before: FOIL, FITZSIMMONS, KUHN, MCCLENDON, and KLINE, J.J.[1]
MCCLENDON, J.
This is an appeal of a judgment rendered in favor of a plaintiff, who suffered injuries in a fight in a bar, against an insurer, who asserts a lack of liability under a policy exclusion for the intentional *723 acts of the insured/defendant. For the reasons that follow, we amend and affirm.

FACTS AND PROCEDURAL HISTORY
On August 19, 1994, the alleged tortfeasor, Cory Walcott, and his date, Sarah Beaver, were sitting at a table with Lindsey Blalock and Brian Bucker at the Extra Innings Lounge in Hammond, Louisiana. The plaintiff, Todd Inzinna, was also at the lounge with friends. Thinking he knew Ms. Beaver and Ms. Blalock, Mr. Inzinna sent drinks to them. The bartender delivering the drinks identified Mr. Inzinna as the person who sent the drinks to the table.
Later Mr. Walcott left to go to the restroom and upon returning, he saw Mr. Inzinna standing at the table, talking to Ms. Beaver and Ms. Blalock. Mr. Bucker was no longer at the table. Mr. Inzinna was standing where Mr. Walcott had previously been sitting, leaning with his full weight on the table. Upon reaching the table, Mr. Walcott slid the chair, in which he had been sitting, away from Mr. Inzinna, with the intention of sitting in the chair himself. Unaware that the chair had been moved, Mr. Inzinna attempted to sit down and fell to the floor. Mr. Inzinna allegedly got up from the floor, approaching Mr. Walcott in an aggressive manner, and shoved Mr. Walcott, who then punched Mr. Inzinna in the face. Lounge employees and other patrons broke up the scuffle. Mr. Walcott immediately left the building, followed by Mr. Inzinna, and a second altercation occurred in the parking lot.
On June 14, 1995, Mr. Inzinna filed suit against Mr. Walcott and his insurer, Allstate Insurance Company (Allstate), for his injuries, which included a dislocated shoulder, a broken nose, and a chipped tooth. After a January 2001 bench trial, the trial court rendered judgment awarding Mr. Inzinna $26,794.25 against Mr. Walcott and Allstate for damages associated with Mr. Inzinna's shoulder, finding that Mr. Walcott negligently caused Mr. Inzinna's shoulder injury. Also, the trial court awarded Mr. Inzinna $21,027.95, solely against Mr. Walcott, for damages associated with Mr. Inzinna's broken nose and chipped tooth, finding Mr. Walcott intentionally caused these injuries by punching Mr. Inzinna in the face. The trial court initially concluded that Allstate was not liable for Mr. Inzinna's facial injuries, based on the intentional acts exclusion in the Allstate policy.
Subsequently, Mr. Walcott filed a motion for new trial, arguing the trial court erred in finding him solely liable for Mr. Inzinna's facial injuries. After a hearing, the trial court granted the motion and signed a second judgment casting both Mr. Walcott and Allstate liable for the entirety of Mr. Inzinna's damages, combining the $26,794.25 and $21,027.95 awards into one $47,822.20 award.
Allstate appealed from the second judgment, and on appeal presents the following issues for review:[2]
I. Whether or not the trial court erred in finding that Allstate's Criminal and Intentional Acts Exclusion did not apply to the alleged criminal and intentional acts of Allstate's insured, Cory Walcott, for the [barroom] brawl which took place on August 19, 1994?

*724 II. Whether or not the trial court manifestly erred in finding that Todd Inzinna injured his shoulder inside of the Extra Innings bar when all of the credible and verified evidence presented at trial, which was supported by the version of events presented by Todd Inzinna, indicated that Todd Inzinna injured his shoulder while throwing a punch at Cory Walcott in the parking lot of the Extra Innings bar?
III. Whether or not the trial court erred in awarding damages to Todd Inzinna for his shoulder injury when he injured his shoulder outside in the parking lot while attempting to throw a punch at Cory Walcott at a time when Todd Inzinna was the aggressor and had consented to the altercation?
IV. Whether or not the trial court manifestly erred in finding Cory Walcott negligent for moving a chair that he was sitting in when there was no evidence presented that Cory Walcott had any reasonable expectation that Todd Inzinna was about to attempt to sit down in Mr. Walcott's chair?
V. When the trial court specifically found that Todd Inzinna made the first aggressive act in the form of a push, did the trial court manifestly err in not finding that the defense of consent was a complete defense to battery, or alternatively, assess some comparative fault on behalf of Todd Inzinna for instigating the altercation?

SHOULDER INJURY AWARD

(Assignments of Error II and III)
On appeal, Allstate claims the trial court committed manifest error in finding Mr. Inzinna's shoulder injury was sustained during the altercation inside the bar, rather than later in the parking lot. Allstate claims this conclusion by the trial court was "not supported by a scintilla of credible evidence at trial." We do not agree.
In reviewing a trial court judgment, an appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a factual determination, the appellate court must find that a reasonable factual basis for the finding of the trial court does not exist in the record and that the record establishes that the finding is clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d at 844; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
Various testimony was given by several witnesses as to the facts surrounding Mr. Inzinna's shoulder injury and causation of said injury. However, Mr. Inzinna testified that he only attempted to throw a punch outside in the parking lot, but realized as he began to do so that he could not. Mr. Inzinna maintained that he injured his shoulder during the scuffle inside the bar. No testimony or evidence was presented which would definitively exclude the shoulder injury occurring inside the bar.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d at 844. In the instant case, the trial *725 court obviously believed that Mr. Inzinna injured his shoulder inside the bar. Thus, we are unable to say the resolution of this issue, which was based on the credibility determination of the lower court, was manifestly erroneous. Under these circumstances, we cannot substitute our judgment for that of the trier of fact. Etcher v. Neumann, 2000-2282, p. 9 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 835, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 105.[3]

NEGLIGENCE ATTRIBUTED TO REMOVAL OF CHAIR

(Assignment of Error IV)
Allstate further contends that no evidence was presented at trial to establish Mr. Walcott's action in moving the chair away from Mr. Inzinna constituted negligence.
Mr. Inzinna testified that he had just walked up to the table and said, "Hello," to the girls sitting there, when he began to sit down. Mr. Inzinna related that before any further words could be exchanged, the chair was yanked from beneath him and he fell to the floor.
Mr. Walcott stated that when he returned from the restroom, Mr. Inzinna was standing in front of the chair where Mr. Walcott had been previously seated. Mr. Walcott maintained that he did not think Mr. Inzinna was going to sit in the chair before he slid it over, as Mr. Inzinna was leaning his full weight on the table. Mr. Walcott testified that he pulled the chair to the side without speaking to anyone at the table and a couple of seconds later, Mr. Inzinna grabbed for the chair and fell.
One reasonable interpretation of the testimony presented to the trial court is that Mr. Walcott slid the chair around to sit in it, not knowing that Mr. Inzinna intended to sit down. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, we are unable to say the trial court's finding of negligence on this issue was in error.

ALLSTATE'S INTENTIONAL ACTS EXCLUSION

(Assignment of Error I)
Allstate contends the trial court erred in concluding Mr. Walcott's acts were negligent rather than intentional. Claiming that "no punch can be negligently thrown at another person's face," Allstate argues that Mr. Inzinna's injuries from the punch were caused by intentional acts and are excluded from coverage under the Allstate policy, which provided, in pertinent part, as follows:
We do not cover any bodily injury ... intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any injured person. This exclusion applies even if ... such bodily injury ... is or a different kind or degree than intended or reasonably expected [.] [Emphasis original.]
The insurer has the burden of proving that a policy exclusion precludes recovery. Williams v. City of Baton Rouge, 98-2024, p. 19 (La.4/13/99), 731 So.2d 240, 253; Collins v. Randall, XXXX-XXXX, p. 3 (La.App. 1 Cir. 12/20/02), 836 So.2d 352, 354. Moreover, exclusions must *726 be narrowly construed and any ambiguity should be construed in favor of coverage. Williams v. City of Baton Rouge, 98-2024 at p. 19, 731 So.2d at 253, citing Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). Therefore, we must examine whether the insurer has established that the intentional act exclusion in its policy applied to the facts of this case.
An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires a physical consequence from his act, whatever the likelihood of that result happening from his conduct, or knows that the a physical consequence is substantially certain to follow from his conduct, whatever his desire may be as to the result. See Young v. Brown, 37,053, p. 4 (La.App. 2 Cir. 4/9/03), 846 So.2d 88, 90, citing Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).
Undoubtedly, a punch in the face, viewed in isolation, is usually considered "intentional." However, under the facts of this case, we believe that it was Mr. Walcott's negligent reaction which resulted in the facial injuries to Mr. Inzinna. The entire sequence of events unfolded with great rapidity: the chair was moved; Mr. Inzinna fell; Mr. Inzinna quickly picked himself up from the floor, shoving Mr. Walcott in the process; and Mr. Walcott punched Mr. Inzinna, perceiving himself under attack. This entire scenario played out in a matter of seconds. The brevity of the interaction is an important factor when considering the consciousness of the act.
A punch in and of itself is not conclusive evidence that an intentional acts exclusion applies. Likewise, acting in selfdefense does not automatically negate the application of an intentional acts exclusion. See Sperli v. Guiterrez, XXXX-XXXX, p. 4 (La.App. 5 Cir. 10/18/00), 772 So.2d 805, 807; Hewitt v. Allstate Insurance Company, 98-0221, p. 6 (La.App. 4 Cir. 1/27/99), 726 So.2d 1120, 1123.
The subjective intent of the insured is the critical issue in determining whether an intentional acts exclusion applies. Further, this subjective intent is a factual determination that is the particular province of the trier of fact.
The concept of intent requires a thought process, resulting in the resolution to commit a particular act. In the instant case, Mr. Walcott had no opportunity for reflection and acted spontaneously and instinctively to a sudden physical encounter, without time to form the requisite intent to commit a specific act. In considering these facts, we recognize that the instinct of self-preservation is primordial.
Since the issue of intent is a fact-intensive issue, particularly in a barroom encounter, the trial court's determination must be given great weight. It is the totality of the circumstances that determines subjective intent rather than any one factor; therefore, individual circumstances must be examined on a case-by-case basis.
In this case, no verbal threat preceded the punch, nor was there any evidence of any previous encounters between the parties prior to this incident. It was never established that Mr. Walcott formed the intent to strike Mr. Inzinna before the punch was thrown. In describing the incident, Mr. Walcott testified that Mr. Inzinna shoved him in an aggressive manner, and he responded with a "jab." Mr. Walcott stated that he did not "rare (sic) back" and that he did not intend any of these events to occur. Consequently, we find that under the particular circumstances of this case, Allstate did not meet its burden of proving that the exclusion in its policy for intentional acts applied to the facts of this case. Further, we cannot substitute our judgment for that of the trial court *727 when, as in this case, the ruling is based on a reasonable interpretation of the evidence presented to the lower court. Hence, we are unable to say the trial court erred in finding coverage for the plaintiff's injuries, and in rejecting Allstate's assertion of the applicability of its intentional acts exclusion.

NEGLIGENCE OF PLAINTIFF

(Assignment of Error V)
In its remaining assignment of error, Allstate seeks to have a percentage of fault assessed to Mr. Inzinna, based on the trial court's finding that Mr. Inzinna shoved Mr. Walcott as he got up from the floor. With respect to Mr. Inzinna's actions, the trial court found that Mr. Inzinna "assumed he was the subject of a prank... and asked if anyone thought his falling was funny," and that as he got up "he pushed" Mr. Walcott. Nevertheless, no fault was assigned to Mr. Inzinna.
Since the trial court decision was issued prior to the rendition of the supreme court's opinion in Landry v. Bellanger, XXXX-XXXX (La.5/20/03), 851 So.2d 943, it was without benefit of the supreme court's rejection of the aggressor doctrine, as being inconsistent with Louisiana's pure comparative fault regime. See Landry v. Bellanger, XXXX-XXXX at p. 18, 851 So.2d at 956. In Landry, the supreme court interpreted LSA-C.C. art. 2323 as requiring a comparative fault assessment of both a plaintiff's and a defendant's negligence where the acts of both parties are negligent or the acts of both parties are intentional. Id.
It is only where a plaintiff is negligent in contributing to his injuries and the defendant has committed an intentional act, that assessment of the comparative fault of the plaintiff is prohibited under LSA-C.C. art. 2323, paragraph (C). See Landry v. Bellanger, XXXX-XXXX at p. 18, 851 So.2d at 956. Otherwise, the supreme court stated that absent a qualifying privilege, any provocative or aggressive conduct on the part of the plaintiff should be incorporated into the allocation of fault by the trier of fact. Landry v. Bellanger, XXXX-XXXX at p. 16, 851 So.2d at 955.
Because we find, in the instant case, that both the plaintiff and the defendant were negligent, a percentage of fault should have been assigned to each. After a thorough review of the evidence presented, we find that the plaintiff's fault was 10% and that of the defendant was 90%. We amend the judgment in favor of plaintiff to so reflect.

CONCLUSION
For the reasons assigned, the judgment of the trial court is amended to find the comparative fault of Todd A. Inzinna to be 10% and the comparative fault of Cory T. Walcott to be 90%, and as amended, the judgment is affirmed. Each party is to bear his own costs of this appeal.
AMENDED; AFFIRMED AS AMENDED.
KLINE, J., concurs in part and dissents in part.
FITZSIMMONS, J., concurs and assigns reasons.
KUHN, J., concurs for the reasons assigned by FITZSIMMONS.
FOIL, J., dissents and would reverse the trial court.
FITZSIMMONS, Judge, agreeing, with additional reasons.
Under the facts of this case, branding a reaction as an intentional act, or "intent," is problematic. Some things are perceived *728 intentional because of our view that throwing a punch involves predisposition. However, given the continuum of time and space in this particular case, I agree that the punch was instinctive and reactive: not intentional. Fear is often a motivator that is not rational, and thus has the possibility of precluding formulated intent. At some stage, courts must re-evaluate the idea of what some unattainable ideal person, called the "ordinary reasonable man," should do, and look at the real totality of the circumstances. Connecting the concept of intent to the mere throwing of a punch prematurely implies formulation of what is sought to be proven: intent. Espousing such a connexity fails to recognize that, of its very nature every "value," and in this case the value ascribed to the concept of intent, is subject to challenge. Thus, I respectfully assign additional reasons.
KLINE, J., Concurring in Part; Dissenting in Part.
I respectfully concur, in part, and dissent, in part, from the majority opinion.
A significant inquiry in this cause is the mindset of the defendant, Mr. Walcott, and the plaintiff, Mr. Inzinna. Whether the defendant's acts were negligent or intentional determines the liability of his insured, Allstate. Comparative fault must also be addressed in each of these harms.
The characterization of the acts of the parties must be examined under the following circumstances, to wit:
(1) The confrontation between plaintiff and defendant occurred at the Extra Innings Lounge, a barroom.
(2) There had been, to some extent, consumption of alcoholic beverages by the parties.
(3) The plaintiff, Mr. Inzinna, at least to the defendant, Mr. Walcott, was a social intruder and an unwelcome guest at the table.
I can concur, in part, with the trial court and with the majority in finding the action of Mr. Walcott, in moving the chair, was negligent. Although I may not have so determined, I am mindful that where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. However, I would attribute 50% of the fault to Mr. Inzinna, whose attention was directed to the ladies at the table and not to his surroundings, including the availability of the chair. I can further agree with the trial court and majority that the shoulder injury occurred during the fall, because it is one of two permissible views of the evidence.
The subsequent confrontation occurred after Mr. Inzinna got up and was punched by Mr. Walcott. However, the facts can support that Mr. Inzinna confronted, assaulted, and pushed Mr. Walcott and then was battered and received facial injuries. I find these are intentional acts by both parties and would assess comparative fault at 50% to each.[1] The insurer, thus, is not liable for damage as a result of this intentional battery by Mr. Walcott.
For these reasons, I concur, in part, and dissent, in part.
NOTES
[1] The Honorable William F. Kline Jr. is serving pro tempore by special appointment of the Louisiana Supreme Court.
[2] Allstate also appealed from the first judgment, but this court dismissed the appeal noting that the first judgment had been superseded by the second judgment rendered pursuant to Mr. Walcott's motion for new trial. Inzinua v. Walcott, XXXX-XXXX (La.App. 1 Cir. 11/19/01) (unpublished).
[3] Having found no error in the trial court's finding that Mr. Inzinna's shoulder injury occurred inside the bar, we find it unnecessary to address Allstate's argument that Mr. Inzinna's actions in the parking lot were totally unprovoked and that therefore he should be held 100% at fault for any injuries incurred in the parking lot.
[1] See Landry v. Bellanger, XXXX-XXXX (La.5/20/03), 851 So.2d 943.