STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

20-3

BRANDON S. WISE

VERSUS

GEORGE O'NEIL, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF ACADIA, NO. 201610639
HONORABLE PATRICK MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, D. Kent Savoie, and Candyce G. Perret, Judges.

**Perret, Candyce, J**. concurs with reasons.

REVERSED.

**Alfred F. Boustany, II**
**Boustany Law Firm**
**P.O. Box 4626**
**Lafayette, LA 70501**
**(337) 261-0225**
**Attorney for Defendants/Appellants:**
  **George O'Neil and Antoinette O'Neil**

**Kenny Oliver**
**David O. Way**
**P.O. Box 82447**
**Lafayette, LA 70598-2447**
**(337) 988-3500**
**Attorneys for Third Party Defendant/Appellee:**
  **Louisiana Farm Bureau Mutual Insurance Company**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Brandon Wise (Brandon) moved into a home next door to George O'Neil (George) and his wife, Antoinette O'Neil (Antoinette) in Mermentau, Louisiana several years ago. According to George's deposition testimony, the peaceful existence George and Antoinette enjoyed with their previous neighbor was not to continue. Brandon's son, Drey Wise (Drey), his nephew, Trevor Goodwin (Trevor), and other visitors repeatedly caused friction with George and Antoinette. Brandon's visitors ran over the O'Neils' trash can without apology and would curse and threaten George when he asked them not to park on or roll over his property. Trevor would intentionally and unnecessarily drive across the O'Neils' property to get to Brandon's driveway. George repeatedly asked Trevor to stop trespassing, but Trevor would ignore the requests and hurl expletives at George claiming it was not his property. George called law enforcement several times, but the behavior persisted. According to George, neighbors on the other side of Brandon also had problems and called the police on more than one occasion. In one such instance the neighbors reported suspected drug activity at the Wises and the Wises accused George of making the report. He says they threatened him on that occasion as they did many other times.

George claims he appealed to Brandon to speak with his son and nephew because he believed they would listen to him. He asserts Brandon's response to that request was just "f**k you." On the day in question George claims he was weed eating his yard when Trevor once again drove across his property to get to Brandon's driveway causing ruts across his yard. George testified he again asked Trevor not to drive on his property. According to George, Trevor was belligerent and replied: "F**k you, I do what I want. It's not your property." George told him he was calling

the police.  As George proceeded to dial 911, Trevor walked up to him and took a swing at him.  George turned to walk away and dropped his cell phone while trying to call 911.  Trevor walked away shouting at George, "You ain't sh*t mother**ker." George called 911 and was informed they were dispatching a police unit.  Trevor jumped in a car and drove around the block.  Brandon came out of his house and went over to George's to talk to him.  George says he again pleaded with Brandon to speak to Trevor and Drey.  Drey was in Brandon's yard during this time.  While Brandon and George were talking, Trevor returned to the scene within minutes. Brandon then said to George "f**k you, f**k you," whereupon Trevor physically attacked George.  Drey and Brandon joined in the fray.  George tried to run away toward the street and then across his yard, but he tripped and fell.   The three continued to "beat" him, "kick" him, "stomp" him, rip gold chains off his neck and punch him telling him, "Yeah. Call the cops now b**ch."  As George lay on the ground they continued to kick and beat him until Brandon told them they had done enough.  "You ain't sh*t, you a pu*sy, you ran, we beat you up, you gonna learn not to ever call the police."  George explained that "as [he] got up and staggered toward [his] house [he] told them the police were on the way.  Brandon then told them, "Well, ya'll, let's f**k him up again."  As the three ran toward George he took out what he describes as a "pocket-knife" and opened the blade.  He maintains he thought that would keep them from coming at him until the police arrived.  It did not.  They attacked him, and while he was on the ground, holding onto the knife, being beaten by the three men, Drey was stabbed three times.  He was taken to the hospital but died from his wounds.

Brandon alleges a different version of the events in his petition for damages. He alleges there was "a verbal altercation" over the placement of a trash can between his seventeen-year-old son and George.  He further asserts the altercation became

physical and resulted in George repeatedly stabbing and killing his "minor child." He alleges these events happened on his property, not on George's as George maintains.

Based on statements to law enforcement made by Brandon, George was arrested. A grand jury returned a no true bill and George was not charged with any offense. George and his wife had to move out of their home as they no longer felt safe. They sold the home and moved to another city. George says he lost his job because he was arrested for a serious crime even though the grand jury refused to indict him on any charge.

Brandon sued George and Antoinette for damages resulting from the death of his son, Drey. The O'Neils answered the suit and filed a reconventional demand against Brandon, his son's estate, and a third-party demand against Trevor. George claimed he suffered injuries in the attack by Brandon, Drey, and Trevor and that he acted in self-defense. Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau), the O'Neils' insurer, filed a motion for summary judgment alleging it is not required to defend the O'Neils and it has no liability under its insurance policy for George's intentional acts under the policy's exclusions of coverage. The trial court granted Farm Bureau's motion and dismissed the case against it with prejudice. The trial court certified the judgment as a final judgment. George and Antoinette appeal asserting the trial court erred in granting summary judgment.

## ANALYSIS

The governing jurisprudence relative to a motion for summary judgment and our appellate standard of review thereof have recently been reiterated by our supreme court as follows:

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.,* 2006–363[,] p. 3 (La.11/29/06), 950 So.2d 544, 546, see [La.Code Civ.P.] art. 966. A summary

3

> judgment is reviewed on appeal *de novo,* with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.

*Guillot v. Guillot*, 12-109, p. 4 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212, 1215 (citations omitted).

Farm Bureau contends that it does not matter which version of the event is closer to the truth for the policy exclusion to apply:

> There is no dispute that George O'Neil intentionally pulled the knife from his pocket, released the blade, 'brandished' the knife and made a 'thrust motion.' Whether or not O'Neil intended the ultimate result of his actions and/or whether his actions were done in self-defense is irrelevant. The policy at issue here includes all bodily injury or damages resulting from an intentional act, regardless of the (sic) whether the results were expected or unexpected.

We note Farm Bureau's version of George's deposition testimony rephrases George's statements out of context to fashion Farm Bureau's take on George's testimony. Farm Bureau, and the trial court, believed that, when George pulled the knife from his pocket and pressed the button opening the blade, this intentional act alone precludes coverage under the "intentional acts" policy exclusion regardless of the result and regardless of whether stabbing Drey was intentional, accidental, unintended, negligent, or unavoidable.

George, however, maintains the policy does not exclude coverage when an insured is forced to act in self-defense and the results of such unintentional and uncontrollable actions in the heat of defending a vicious attack on his person cannot be termed "intentional acts." Thus, he argues, the intentional act exclusion does not apply in the factual scenario he has alleged in his reconventional demand and as he testified to in his deposition. Therefore, George maintains Farm Bureau owes he and Antoinette a defense to Brandon's suit, and, if Brandon prevails, Farm Bureau's

4

policy must pay up to its policy limits. He asserts this case is not ripe for summary judgment because (1) there are unresolved genuine issues of material fact and (2) Farm Bureau is not entitled to judgment as a matter of law.

George and Brandon disagree about the factual basis of this event and George's actions. Indeed, there are several critical facts in dispute concerning the events which resulted in Drey's untimely death. These disparities cannot be resolved without credibility determinations which are not appropriate for summary judgment. Moreover, the jurisprudence on the core legal issue here does not demonstrate that Farm Bureau is entitled to summary judgment as a matter of law as it contends. Farm Bureau says the mere fact that George admits he removed the knife from his pocket and extended the blade *ipso facto* establishes the exclusion under its all-encompassing language. We disagree with that interpretation of "intentional acts" exclusions in insurance policies as our jurisprudence has defined it. George maintains he took the knife out of his pocket and displayed it with the blade open hoping only to dissuade his attackers from continuing their second advance toward him in hopes the police would arrive in time. The fact that a grand jury did not charge George with any criminal offense is telling. It is for a civil jury to now decide if they believe George, or if they believe Brandon's version of events that portray George as an intentional bad actor who intentionally killed Brandon's son over a trash can dispute. As to whether Farm Bureau is entitled to summary judgment as a matter of law dismissing the case against them and absolving them of providing a defense to George and Antoinette, we find it is not possible on summary judgment motion to make a determination under these disputed facts.

> Summary judgment may be rendered on the issue of insurance coverage alone. *See Romano*[*v. Altentaler,* 2011–0303 (La.App. 1st Cir.9/14/11), 77 So.3d 282] at 284. *However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy,*

5

*when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Id.* Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. *Jarrell v. Travis,* 2004–0117 (La.App. 1 Cir.2/11/05), 906 So.2d 551, 553.

> *Summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith, or knowledge. Id.* But, an exception is recognized when no genuine issue of material fact exists concerning the relevant intent or motive, and the only issue to be decided is the ultimate conclusion to be drawn from the uncontested material facts. *See Romano,* 77 So.3d at 284. *However, the issue of subjective intent is fact-intensive and is an issue to be determined by the totality of the circumstances examined on a case-by-case basis. Inzinna v. Walcott,* 2002–0582 (La.App. 1st Cir.11/21/03), 868 So.2d 721, 726. *See also Baggett v. Tassin,* 09-803 (La.App. 5 Cir. 3/23/19), 39 So.3d 666, 670-671.

*Estes v. St. Tammany Par. Sch. Bd.*, 12-1750, pp. 5-6 (La.App. 1 Cir. 6/7/13), 118 So.3d 1264, 1266–68 (emphasis added), *writ denied*, 13-1946 (La.11/8/13), 125 So.3d 457.

Farm Bureau's policy excludes coverage for bodily injury that results from "intentional acts or directions by" its insured regardless of whether the "results" of such "intentional acts or directions" were expected or unexpected.[1] Farm Bureau's

---

[1]

> Coverage E-Personal Liability and Coverage F-Medical Payments to Others do not apply to bodily injury or property damage:

a. Resulting from intentional acts or directions by you or any insured. The expected or unexpected results of those acts or directions are not covered.

The insurance policy also defines "bodily injury" and a covered "occurrence:"

> DP-1

1. [B]odily injury means physical injury to the body of or sickness or disease sustained by, a natural person. This includes death, required care, loss of services, claim for wrongful death resulting from the bodily injury, mental pain and suffering or mental anguish resulting directly from physical injury to the body of that natural person.

7. "[O]ccurrence" means an accident, including exposure to conditions, which result in:

a. Bodily injury; or

application of this language to George's alleged facts focuses not on a determination of George's intent in displaying the knife, much less his intent, if any, to stab Drey with the knife, but instead relies on its contention that George's action in removing the knife from his pocket is an intentional act which alone *ipso facto* excludes coverage. This proposition turns logic on its head. In *Baggett*, 39 So.3d at 670–71 (emphasis in original and added), our sister circuit addressed the issue of intentional act exclusions in insurance policies where, as in the present case, there is no policy language mentioning self-defense:

> Likewise, *acting in self-defense does not automatically negate the application of an intentional acts exclusion.* [Citations omitted.]
>
> The subjective intent of the insured is the critical issue in determining whether an intentional acts exclusion applies. Further, this subjective intent is a factual determination that is the particular province of the trier of fact.
>
> *The concept of intent requires a thought process*, resulting in the resolution to commit a particular act. In the instant case, ***Mr. Walcott had no opportunity for reflection and acted spontaneously and instinctively to a sudden physical encounter, without time to form the requisite intent to commit a specific act.*** **In considering these facts, we recognize that the instinct of self-preservation is primordial**. [Emphasis added.]

[T]he issue of intent is a fact-intensive issue.... It is the totality of the circumstances that determines subjective intent rather than any one factor; therefore, individual circumstances must be examined on a case-by-case basis.

*Inzinna,* 2002–0582 at 7–8, 868 So.2d at 726.

A person's subjective intent or expectation must be determined not only from what he said or how he acted before, at the time of, and after his pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation. *Jarrell v. Travis,* 2004–0117, p.

---

b.  Property damage

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one "occurrence."

7

5 (La.App. 1 Cir. 2/11/05), 906 So.2d 551, 554; *see also, Yount v. Maisano,* 627 So.2d 148, 152 (La.1993).

> *Whether a person "simply reacted to a situation without time to consider the consequences of his reaction," so that his act was not intentional,* or whether his act demonstrates he "must have expected or intended the resultant injuries," the question of his "subjective intent is obviously determinative of the outcome of this litigation, and based upon the facts of this case, summary judgment is inappropriate as to this issue." *Jarrell v. Travis, supra.*

> We find there are genuine issues of material fact that preclude summary judgment. Here, as in *Graphia*[*v. Schmitt*, 08-613, (La.App. 5 Cir. 1/13/09), 7 So.3d 716], there is a question whether Tassin acted in self-defense/defense of another (his son), rather than as an aggressor. Was his act a spontaneous and instinctive move to defend his minor son from a perceived attack by an adult, or did he intend his act or the injury that resulted or may reasonably have been expected to result from it? The language of the intentional act clause does not specify self-defense/defense of others within its exclusion. Therefore, this is a genuine issue of fact that remains to be determined. The case is not ripe for summary judgment.

Likewise, in this case, George claims he, too, simply reacted to a situation without time to consider the consequences of his reaction, and that Drey being stabbed was not intentional. Brandon disputes this claim. Neither the trial court, nor this court, can resolve this pivotal factual dispute on summary judgment. We reject Farm Bureau's notion that the mere fact George took a knife from his pocket and opened the blade is enough evidence of his "intent" to stab Drey. Drey's injuries did not happen because George displayed his knife. A jury could find George's testimony credible under all the factual circumstances that would undoubtedly be presented at a trial and might reasonably conclude that George's intentions in showing that he had a knife are just as he claims. The fact that a grand jury found no reason to charge George with any criminal offense related to Drey's death, we again reiterate, is telling. A civil jury convened in this case might well judge his conduct was not intentional and done in self-defense. The Louisiana Supreme Court's discussion in *Breland v. Schilling*, 550 So.2d 609 (La.1989) is very

8

instructive in considering the effect of self-defense on an intentional acts exclusion in insurance policies.

> The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages." *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181, 186 (1984). *Accord, United Servs. Auto. Ass'n v. Elitzky,* 517 A.2d 982 (Pa.Super.Ct.1986).

> The purpose of liability insurance, on the other hand, is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage. *Borden, Inc. v. Howard Trucking Co., Inc.,* 454 So.2d 1081, 1090 (La.1984); *LeJeune v. Allstate Ins. Co.,* 365 So.2d 471, 479 (1978). And an exclusion from coverage should be narrowly construed. *Snell v. Stein,* 261 La. 358, 259 So.2d 876 (1972).

*Id*. at 610.

In *Inzinna*, 868 So.2d 721, the first circuit addressed the impact of an insured acting in self-defense under the immediacy of violent behavior toward him on an intentional act exclusionary clause. In that case:

> The entire sequence of events unfolded with great rapidity: the chair was moved; Mr. Inzinna fell; Mr. Inzinna quickly picked himself up from the floor, shoving Mr. Walcott in the process; and Mr. Walcott punched Mr. Inzinna, perceiving himself under attack. This entire scenario played out in a matter of seconds.

*Id*. at 726.

The appellate court noted that "a punch in the face, viewed in isolation, is usually considered 'intentional.'" *Id*. But, upon determining the unique facts of this event the court concluded that Walcott's action was not an "intentional act" but was a "negligent reaction" in defense of his person. *Id.* The court held:

> A punch in and of itself is not conclusive evidence that an intentional acts exclusion applies. Likewise, acting in self-defense does not automatically negate the application of an intentional acts exclusion. *See Sperli v. Guiterrez,* 2000–1089, p. 4 (La.App. 5 Cir. 10/18/00), 772 So.2d 805, 807; *Hewitt v. Allstate Insurance*

*Company,* 98–0221, p. 6 (La.App. 4 Cir. 1/27/99), 726 So.2d 1120, 1123.

> The subjective intent of the insured is the critical issue in determining whether an intentional acts exclusion applies. Further, this subjective intent is a factual determination that is the particular province of the trier of fact.

> The concept of intent requires a thought process, resulting in the resolution to commit a particular act. In the instant case, Mr. Walcott had no opportunity for reflection and acted spontaneously and instinctively to a sudden physical encounter, without time to form the requisite intent to commit a specific act. *In considering these facts, we recognize that the instinct of self-preservation is primordial.*

> Since the issue of intent is a fact-intensive issue, particularly in a barroom encounter, the trial court's determination must be given great weight. It is the totality of the circumstances that determines subjective intent rather than any one factor; therefore, individual circumstances must be examined on a case-by-case basis.

*Id.*

Likewise, a jury may conclude that George "acted spontaneously and instinctively to a sudden physical encounter, without time to form the requisite intent" to stab Drey. *Id.* If that is the ultimate conclusion of a jury of fact finders then the exclusion clause in Farm Bureau's policy will not apply to George's actions. We, therefore, find Farm Bureau owes its insureds a defense to Brandon's claim for damages.

> Generally, an insurer's obligation to defend suits against its insured is broader than its liability for damage claims. *Prestenbach v. Badeaux,* 03–809, p. 3 (La.App. 5 Cir. 12/30/03), 865 So.2d 180, 182; *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993). Within this context, the insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, and the insurer is obligated to defend the insured, unless the petition unambiguously excludes coverage. The allegations in the petition are to be construed liberally to determine whether they state grounds bringing the claims within the scope of the insurer's duty to defend. Assuming all the allegations of the petition to be true, if there would be coverage under the policy and also liability to the plaintiff, the insurer must defend this suit, regardless of the outcome of the suit. The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. *Prestenbach v. Badeaux,* 03–

10

809, p. 3 (La.App. 5 Cir. 12/30/03), 865 So.2d 180, 182; *Audubon Trace Condominium Ass'n v. Brignac–Derbes, Inc.,* 03–746, p. 5 (La.App. 5 Cir. 11/25/03), 862 So.2d 157, 159, *writ denied,* 03–3483 (La.3/12/04), 869 So.2d 822; *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993).

*Graphia*, 7 So.3d at 718–20.

We are mindful of this court's previous decisions in *Perkins v. Shaheen,* 03–1254 (La.App. 3 Cir. 3/3/04), 867 So.2d 135, and in *Guillot,* 92 So.3d 1212. In both cases we addressed the same policy language in a Farm Bureau insurance policy as we have before us now. In those cases, we found the same Farm Bureau intentional acts exclusion does indeed exclude coverage for "*intentional*" acts of the insured regardless of whether the resulting injury was expected or not. In *Perkins,* two minors were engaged in an altercation. Hank Shaheen intentionally threw Shane Perkins through a plate glass window. In *Guillot*, Reece and Benjamin Guillot intentionally physically attacked and injured Wayne Guillot. In both cases we found the facts established *intentional* acts on the part of the insureds which precipitated the policy exclusion. In neither case was there a claim of self-defense.

For the reasons stated, we reverse the trial court judgment granting summary judgment to Farm Bureau and dismissing it with prejudice. We remand the matter to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed against Farm Bureau.

**REVERSED**.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

20-3

BRANDON S. WISE

VERSUS

GEORGE O'NEIL, ET AL.

**PERRET, CANDYCE, J.  CONCURS WITH REASONS:**

I respectfully concur with the majority's finding that there are genuine issues of material fact regarding whether Mr. O'Neil's actions were intentional, thus invoking the intentional act exclusion in Farm Bureau's policy.  I also agree with the majority's conclusion that these issues preclude summary judgment.

I write separately merely to emphasize that under the exclusionary language of Farm Bureau's policy, it does not matter whether O'Neil intended to stab Drey Wise, as the policy excludes damages "[r]esulting from intentional acts or directions by you or any insured.  The expected *or unexpected* results of those acts or directions are not covered."  (emphasis added).  However, a determination of whether Mr. O'Neil, in brandishing his knife, was acting intentionally or was reacting to an affront "without time to form the requisite intent to commit a specific act" is necessary in this case.  *Inzinna v. Walcott*, 02-582, p. 8 (La.App. 1 Cir. 6/6/08), 868 So.2d 721, 727.  In making that determination, the trial court would need to make credibility determinations.  Therefore, there are material issues of fact preventing summary judgment in this case.